FILED
United States Court of Appeals
Tenth Circuit

December 22, 2014

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT
_____

STATE OF OKLAHOMA, EX REL.,

     Plaintiff - Appellee,

v.

TIGER HOBIA, as Town King and
member of the Kialegee Tribal Town
Business Committee, et al.,

     Defendants - Appellants,

and

FLORENCE DEVELOPMENT
PARTNERS, LLC, as Oklahoma limited
liability company,

     Defendant.

------------------------------

THE STATE OF NEW MEXICO, et al.,

     Amici Curiae.

_____

STATE OF OKLAHOMA, EX REL.,

     Plaintiff – Appellee

v.

No. 12-5134

FLORENCE DEVELOPMENT PARTNERS, LLC, an Oklahoma limited liability company,

        Defendant – Appellant,

and

TIGER HOBIA, as Town King and member of the Kialegee Tribal Town Business Committee; THOMAS GIVENS, as 1st Warrior and member of the Kialegee Tribal Town Business Committee; KIALEGEE TRIBAL TOWN, a federally chartered corporation,

        Defendants.

--------------------------------

THE STATE OF NEW MEXICO; STATE OF MICHIGAN,

        Amici Curiae.

No. 12-5136

—————————————————

**ORDER**

—————————————————

Before **BRISCOE**, Chief Judge, **KELLY** and **BACHARACH**, Circuit Judges.

—————————————————

These matters are before the court on the State of Oklahoma's *Petition for Rehearing or Rehearing En Banc*. We grant panel rehearing to the extent of the amendments made to the revised Opinion attached to this order. The clerk of court is directed to vacate the decision issued originally on November 10, 2014 and to reissue the attached version.

The *Petition for Rehearing or Rehearing En Banc*, as well as the newly revised Opinion, were also transmitted to all of the judges of the court who are in regular active service and who are not recused. As no member of the panel and no judge in regular active service on the court requested that the court be polled, the request for en banc review is denied.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 22, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

STATE OF OKLAHOMA, EX REL.,

    Plaintiff-Appellee,

v.

TIGER HOBIA, as Town King and
member of the Kialegee Tribal Town
Business Committee; THOMAS
GIVENS, as 1st Warrior and member
of the Kialegee Tribal Town Business
Committee; KIALEGEE TRIBAL
TOWN, a federally chartered
corporation,

      Defendants-Appellants,

and

FLORENCE DEVELOPMENT
PARTNERS, LLC, an Oklahoma
limited liability company,

    Defendant.
......................

THE STATE OF NEW MEXICO;
STATE OF MICHIGAN,

    Amici Curiae.

No. 12-5134

STATE OF OKLAHOMA, EX REL.,

     Plaintiff-Appellee,

v.

FLORENCE DEVELOPMENT
PARTNERS, LLC, an Oklahoma
limited liability company,

     Defendant-Appellant,

and

TIGER HOBIA, as Town King and
member of the Kialegee Tribal Town
Business Committee; THOMAS
GIVENS, as 1st Warrior and member
of the Kialegee Tribal Town Business
Committee; KIALEGEE TRIBAL
TOWN, a federally chartered
corporation,

     Defendants.
.......................

THE STATE OF NEW MEXICO;
STATE OF MICHIGAN,

     Amici Curiae.

No. 12-5136

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. No. 4:CV-12-00054-F)**

---

Matthew Justin Kelly of Fredericks Peebles & Morgan LLP, Washington, DC,
(Martha L. King of Fredericks Peebles & Morgan LLP, Louisville, Colorado;

2

Dennis J. Whittlesey, Jr. of Dickinson Wright PLLC, Washington, DC; H. James Montalvo, Law Offices of H. James Montalvo, P.A., South Miami, Florida, with him on the briefs), for Defendants-Appellants.

Patrick R. Wyrick, Solicitor General, (E. Scott Pruitt, Attorney General, Oklahoma Office of the Attorney General, and M. Daniel Weitman, Assistant Attorney General, Oklahoma City, Oklahoma; Lynn H. Slade, William C. Scott and Sarah M. Stevenson of Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, New Mexico, with him on the briefs), for Plaintiff-Appellee.

Gary K. King, Attorney General, State of New Mexico, Santa Fe, New Mexico, and Christopher D. Coppin, Special Assistant Attorney General, State of New Mexico, Albuquerque, New Mexico, filed an amicus curiae brief for the State of New Mexico.

Bill Schuette, Attorney General, State of Michigan, John J. Bursch, Solicitor General, State of Michigan, and S. Peter Manning and Louis B. Reinwasser, Assistant Attorneys General, State of Michigan, Lansing, Michigan, filed an amicus curiae brief for the State of Michigan.

---

Before **BRISCOE,** Chief Judge, **KELLY** and **BACHARACH**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

---

We once again address the subject of Indian gaming and, following the lead of the Supreme Court's recent decision in Michigan v. Bay Mills Indian Cmty., 134 S.Ct. 2024 (2014), emphasize that any federal cause of action brought pursuant to 25 U.S.C. § 2710(d)(7)(A)(ii) of the Indian Gaming Regulatory Act (IGRA) to enjoin class III gaming activity must allege and ultimately establish that the gaming "is located on Indian lands." 25 U.S.C. § 2710(d)(7)(A)(ii). If, as here, the complaint alleges that the challenged class III gaming activity is

3

occurring somewhere other than on "Indian lands" as defined in IGRA, the action fails to state a valid claim for relief under § 2710(d)(7)(A)(ii) and must be dismissed.

The State of Oklahoma filed this action against officials of the Kialegee Tribal Town, a federally recognized Indian tribe in Oklahoma, claiming that they, along with a federally-chartered corporation related to the tribe and a related Oklahoma limited liability company, were attempting to construct and ultimately operate a class III gaming facility on a parcel of land in Broken Arrow, Oklahoma, that was neither owned nor governed by the Tribal Town, in violation of both IGRA and a state-tribal gaming compact. Defendants moved to dismiss the complaint, but the district court denied their motion. The district court subsequently granted a preliminary injunction in favor of the State that prohibited defendants from constructing or operating a class III gaming facility on the property at issue. Defendants now appeal. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we conclude that, in light of Bay Mills, the State has failed to state a valid claim for relief. We therefore reverse and remand to the district court with instructions to vacate its preliminary injunction and to dismiss the State's complaint.

4

I

*Factual background*

*a) The Tribe*

The Kialegee Tribal Town (the Tribe) is a federally recognized Indian tribe, organized under Section 3 of the Oklahoma Indian Welfare Act (OIWA), 25 U.S.C. § 503 et seq. The Tribe, headquartered in Wetumka, Oklahoma, first received federal recognition in 1936. The Tribe has no reservation and, in a 1990 application it submitted to the Bureau of Indian Affairs (BIA), stated "that it 'had no land.'" Add. at 25.

The Tribe is governed in accordance with a constitution and by-laws that were approved by the Secretary of the Interior (Secretary) on April 14, 1941, and ratified by the Tribe on June 12, 1941. The 1941 Constitution established the Kialegee Tribal Town Business Committee (Business Committee) as the Tribe's governing body.

*b) The parties*

Defendant Tiger Hobia is the Tribe's Town King, a member of the Business Committee, and a citizen and resident of the State of Oklahoma. Defendant Thomas Givens is the Tribe's 1st Warrior, a member of the Business Committee, and a citizen and resident of the State of Oklahoma.

Defendant Kialegee Tribal Town (the Town Corporation) is a federally chartered corporation. Its federal charter was issued under Section 3 of the

5

OIWA, approved by the Secretary of the Interior on July 23, 1942, and ratified by the Tribe on September 17, 1942. The charter provides the Town Corporation with the power to sue and be sued.

Florence Development Partners, LLC (Florence Development) is an Oklahoma limited liability company doing business in the State of Oklahoma.

*c) The gaming compact between the State and the Tribe*

In 2004, the State of Oklahoma established a model tribal gaming compact that effectively constitutes a "pre-approved" offer to federally recognized tribes in the State (Model Compact). Add. at 27. If a tribe accepts the Model Compact, obtains approval of the Model Compact by the Secretary of the Interior, and complies with the requirements of IGRA, the tribe can operate class III gaming facilities on its Indian lands.

On April 12, 2011, the Tribe accepted the Model Compact, and the Tribe and State entered into what is referred to as "the Kialegee Tribal Town and State of Oklahoma Gaming Compact" (Tribal-State Gaming Compact). App. at 692. The Secretary of the Interior approved the Tribal-State Gaming Compact on July 8, 2011. The Tribal-State Gaming Compact authorizes the Tribe to operate gaming "only on its Indian lands as defined by IGRA." Add. at 27 (internal quotation marks omitted).

6

*d) Defendants' construction of a gaming facility in Broken Arrow, Oklahoma*

By their own admission, defendants "engaged in the construction of and [had] plan[ned] to operate the Red Clay Casino as a [c]lass III gaming facility under IGRA," App. at 394, "at the southwest corner of Olive Avenue and Florence Place, in Broken Arrow, Oklahoma," id. at 30.

*e) The location of the gaming facility*

The property on which the gaming facility was being built (the Property) is located more than 70 miles away from the Tribe's headquarters and is not held in trust by the United States for the Tribe. Instead, at the time the construction began, the Property was "owned by [sisters] Wynema Capps and Marcella Gibbs, as tenants in common, subject to federal restraints against alienation." Id. at 32. Both Capps and Giles were enrolled members of the Muscogee (Creek) Nation.

The ownership of the Property can be traced to Tyler Burgess, an enrolled Creek Indian of full blood. "In 1901, the Creek Nation and the United States entered into [an] agreement governing the allotment of the Creek Nation's lands." Add at 35. "Under Section 23 of the 1901 agreement, the Principal Chief of the Muskogee Nation was to execute and deliver to each citizen of the Muskogee Nation an allotment deed conveying to him all right, title, and interest of the Creek Nation and of all other citizens in and to the lands embraced in his allotment certificate." Id. (internal quotation marks omitted). "On August 6,

7

1903, as part of the allotment of those lands, an allotment deed and homestead patent [for 160 acres] were issued to Tyler Burgess." Id. Burgess was not a member of the Tribe, but rather was an enrolled member of Lochapoka Town (a division of the Creek Nation).

Burgess's allotted land subsequently passed by descent to two heirs: Capps and Giles. Capps and Giles hold the land as tenants in common, subject to federal restrictions and restraints against alienation. The land encompasses the Property at issue.

The Property is not held in trust by the United States for the Tribe or for the benefit of any enrolled member of the Tribe. And, as of May 18, 2012 (the date of the preliminary injunction hearing held by the district court in this case), the Property was not held by either the Tribe or an enrolled member of the Tribe subject to restriction by the United States against alienation.

*f) The leases of the Property*

In May 2010, the Town Corporation, "as Tenant, executed a Prime Ground Lease with Capps and Giles, as Landlord, for the . . . Property as a site for a proposed casino facility." Id. at 40. Capps and Giles subsequently filed a petition in Oklahoma state district court seeking approval, pursuant to the Act of August 4, 1947, 61 Stat. 731, of the proposed Prime Ground Lease. On August 17, 2011, the state district court entered an order withholding its approval of the Prime Ground Lease. In doing so, the state district court noted "that it was not

the appropriate forum to resolve intertribal jurisdictional disputes between the Muscogee (Creek) Nation and the [Tribe], and concluded that an individual citizen cannot transfer government jurisdiction over his or her property by the terms of a lease." Add. at 40 (internal quotation marks omitted).

"In the meantime, on May 10, 2011, Capps and Giles, as Landlord, entered into a separate Ground Lease Agreement with Defendant Florence Development . . . as Tenant, pertaining to the . . . Property" (the May 2011 Lease). Id. at 41. "On approximately December 1, 2011, the May 2011 Lease was amended by a First Amendment to Ground Lease Agreement . . . to add the [Tribe] as a signatory party." Id.

The May 2011 Lease "was written to have a term of six year[s] and 11 months so it would not have to be approved by the Secretary of the Interior or his designee." Id. But the May 2011 Lease purported to grant Florence Development the right to extend the term of the lease for four periods of ten years each. Id.

*g) The operating agreement and ensuing construction*

In May 2011, the Tribe, Giles, Capps, and Golden Canyon Partners, LLC, "entered into the Operating Agreement of Florence Development . . . to create a joint venture to build and operate the Red Clay Casino." Id. at 42.

In December 2011, defendants proceeded with actual construction of the casino on the Property by commencing grading and site preparation. By May 2012, "the structure was up and the inside sprinkler systems were in place." Id.

9

*h) The National Indian Gaming Commission's decision*

In April 2011, the Tribe sent the National Indian Gaming Commission (NIGC) notice of the Tribe's intent to license a new gaming facility on the Property. The Tribe's purpose in doing so was to obtain a decision from the NIGC regarding "the gaming-eligible status of the . . . Property." Aplt. Supp. Br. at 10.

On May 24, 2012, the NIGC's general counsel issued a memorandum to the NIGC's chairwoman opining that the Property did not qualify as the Tribe's Indian lands eligible for gaming because the Tribe had not established that it had legal jurisdiction over the Property for purposes of IGRA. The following day, May 25, 2012, the NIGC's chairwoman sent the Tribe a letter adopting the general counsel's opinion. The letter stated that if gaming was commenced by the Tribe on the Property, the chairwoman would exercise her enforcement authority under 25 U.S.C. § 2713 to issue a notice of violation and temporary closure order.

The Tribe requested reconsideration, which the chairwoman denied.

*Procedural background*

*a) The district court proceedings*

The State initiated this action on February 8, 2012, by filing a complaint in federal district court against Tiger Hobia, Thomas Givens, other unnamed members of the Kialegee Tribal Town Business Committee (all in their capacities as members and officers of the Business Committee), Florence Development, and

10

the Town Corporation. The complaint sought "declaratory and injunctive relief to prevent Defendants . . . from proceeding with construction or operation of the proposed 'Red Clay Casino,' in direct violation of both" the Tribal-State Gaming Compact and IGRA. App. at 22. In describing the Property on which the casino was being built, the complaint alleged that it was owned by "enrolled member[s] of the Muscogee (Creek) Nation," id. at 32, was "not within the limits of an Indian reservation within the meaning of IGRA," id., was "not held in trust by the United States for the benefit of the" Tribe, id., or "an enrolled member of the" Tribe, id. at 33, was "not held by either the . . . Trib[e] . . . or an enrolled member of the . . . Trib[e] . . . subject to restriction by the United States against alienation," id., and that the "Trib[e] . . . d[id] not have a possessory interest in" or "exercise[] governmental power" over the Property, id. Based upon these alleged attributes, the complaint in turn alleged that the "Property d[id] not meet the definition of 'Indian land' . . . as required by the IGRA." Id. at 13; see id. ("the Property is not 'Indian lands, as required by IGRA, 25 U.S.C. §2703(4)(A), nor is it, with respect to the . . . Trib[e] . . . 'its Indian lands,' as required by the . . . Gaming Compact").

The "First Claim for Relief" in the complaint alleged that the State was "entitled to a declaratory judgment that the Committee Defendants lack[ed] authority under federal law and the federally approved [Tribal-]State Gaming Compact to construct or operate a gaming facility on the . . . Property." Id. at 36.

11

The "Second Claim for Relief" alleged that the State was "entitled to a declaratory judgment that (i) the . . . Property [wa]s not land within the [Tribe's] jurisdiction and [wa]s not land over which the [Tribe] exercise[d] governmental power and (ii) the Defendants' efforts to construct or operate a [c]lass III gaming facility on the . . . Property [wa]s in direct violation of the requirements of the IGRA and the [Tribal-]State Gaming Compact." Id. at 38-39. The "Third Claim for Relief" sought a preliminary injunction "restraining the continued construction and proposed operation of an illegal, unauthorized gaming facility" on the Property. Id. at 39. Lastly, the "Fourth Claim for Relief" sought both a preliminary and permanent injunction "restraining the Defendants from proceeding with the construction or operation of the proposed Casino." Id. at 40.

Along with its complaint, the State filed a motion for preliminary injunction asking the district court to enjoin defendants from taking any action to construct or to operate a class III gaming facility on the Property.

Defendants moved to dismiss the complaint on a number of grounds, including Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted. The district court, however, denied defendants' motions.

On May 18, 2012, the district court held an evidentiary hearing on the State's motion for preliminary injunction and, at the conclusion of the hearing, orally granted the State's motion. On July 20, 2012, the district court followed up its oral ruling and issued an opinion and order preliminarily enjoining defendants

12

from "proceeding with development or construction of the proposed Red Clay Casino or any other gaming facility on the . . . Property . . . [and from] conducting [c]lass III gaming on the . . . Property." Id. at 539.

Defendants moved to reconsider or modify the preliminary injunction. In support of their request to reconsider, defendants alleged that in May 2012, Giles and Capps applied for and were granted membership in the Tribe, and that, as a result, the Tribe had a direct interest in the Property. As an alternative to reconsideration, defendants asked the district court to modify the preliminary injunction to allow them to continue construction of buildings on the Property for use as a sports bar or restaurant. The district court denied defendants' motion to reconsider, but granted in part their motion to modify.

Defendants subsequently appealed.

*b) Appellate proceedings*

On September 5, 2013, we abated these appeals pending the Supreme Court's resolution of Bay Mills. On May 30, 2014, the State submitted a status report noting that the Supreme Court had decided Bay Mills on May 27, 2014. Later that same day, and in response to the State's status report, we directed the parties to submit supplemental briefs addressing two issues: (1) whether these proceedings had been rendered moot by the NIGC chairwoman's determination that the Tribe lacked jurisdiction to conduct gaming on the Property; and (2) the impact of the Supreme Court's Bay Mills decision on these proceedings. The

13

parties have since complied with our order.

## II

*Mootness*

We turn first to the question of whether this case was rendered moot by the NIGC chairwoman's May 25, 2012 letter determining that the Tribe lacked jurisdiction over the Property to conduct gaming pursuant to IGRA. A case becomes constitutionally moot when the parties no longer have a legally recognizable interest in the result. City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000). In other words, "[c]onstitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual, ongoing cases or controversies." Seneca-Cayuga Tribe of Okla. v. Nat'l Indian Gaming Comm'n, 327 F.3d 1019, 1028 (10th Cir. 2003) (internal quotation marks and brackets omitted). "[T]he conditions under which a suit will be found constitutionally moot are stringent." Id. (internal quotation marks omitted).

After carefully examining the chairwoman's letter to the Tribe, we are not persuaded that it necessarily prevented the wrongful behavior alleged by the State in its complaint from occurring. Without question, the letter concluded that the Property was ineligible for gaming by the Tribe pursuant to IGRA. But the letter did not constitute "final agency action" under IGRA. See 25 U.S.C. § 2714 (defining what constitutes "final agency action" under IGRA). Indeed, the letter itself anticipated the possibility of future agency action by advising the Tribe that

14

if it commenced gaming on the Property, the chairwoman would exercise her enforcement authority under 25 U.S.C. § 2713 and issue a notice of violation and temporary closure order.[1]

Section 2713(b) of IGRA addresses "[t]emporary closure" orders and provides that, "[n]ot later than thirty days after the issuance by the Chairman of an order of temporary closure, the Indian tribe . . . involved shall have a right to a hearing before the Commission to determine whether such order should be made permanent or dissolved."  25 U.S.C. § 2713(b)(2).  Section 2713(c) in turn provides that "[a] decision of the Commission . . . to order a permanent closure pursuant to this section shall be appealable to the appropriate Federal district court."  25 U.S.C. § 2713(c).

Thus, in sum, the chairwoman's letter anticipated the possibility of future wrongful conduct on the part of the Tribe, i.e., conducting gaming on the Property, and in turn future agency action, i.e., a hearing before the Commission and a final decision as to whether to permanently close the Tribe's gaming facility on the Property.  As a result, we cannot characterize the chairwoman's letter as a "final agency decision," nor can we say that the letter rendered the State's claims

---

[1] Although the letter discussed the requirements for gaming under 25 U.S.C. § 2710, we do not believe that the letter can be read as an exercise of the chairwoman's authority under that section.  More specifically, the letter did not involve the approval of any proposed tribal ordinance or resolution authorizing class III gaming activities on the Property, or a tribal-state gaming compact.  See 25 U.S.C. §§ 2710(d)(1)(A)(iii), (d)(2)(B), (d)(8).  Nor, clearly, did the letter concern the chairwoman's authority under 25 U.S.C. §§ 2711 or 2712.

in this case moot.

*The impact of the Supreme Court's <u>Bay Mills</u> decision*

Having concluded that the case is not moot, we turn to the other question that we asked the parties to address in their supplemental briefs: the impact of the Supreme Court's recent decision in <u>Bay Mills</u> on the State's claims in this case. Although the State suggests that <u>Bay Mills</u> supports its claims and the district court's decision to grant a preliminary injunction in the State's favor, our own review of <u>Bay Mills</u> persuades us otherwise. As we shall proceed to explain, we conclude that in light of <u>Bay Mills</u>, the complaint in this case failed to state a claim upon which relief could be granted and, consequently, the district court erred in granting a preliminary injunction in favor of the State.

*a) IGRA and class III gaming activities*

To set the stage for examining <u>Bay Mills</u>, we begin by briefly outlining certain key provisions of IGRA relating to class III gaming activities conducted by tribes. Section 2710(d) of IGRA provides that "[c]lass III gaming activities shall be lawful on Indian lands" if certain specified conditions are met. 25 U.S.C. § 2710(d)(1). Among those conditions is a requirement that such class III gaming be "conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State" pursuant to the provisions of IGRA. <u>Id.</u> § 2710(d)(1)(C). Section 2710(d) also makes clear that an Indian tribe must "hav[e] jurisdiction over the Indian lands upon which" it seeks to conduct class

16

III gaming activities.  Id. § 2710(d)(3)(A).

Consistent with its authorization of class III gaming on Indian lands over which an Indian tribe has jurisdiction, IGRA provides that "[t]he United States district courts shall have jurisdiction over . . . any cause of action initiated by a State or Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact entered into" pursuant to IGRA.[2]  25 U.S.C. § 2710(d)(7)(A)(ii).  Necessarily, this authorization includes a waiver of a defendant tribe's sovereign immunity.  See Bay Mills, 134 S.Ct. at 2029 n.2, 2032.

*b) The holding in Bay Mills*

In Bay Mills, the State of Michigan filed a federal suit against Bay Mills Indian Community (Bay Mills), a federally recognized Indian Tribe, seeking to enjoin the tribe from operating a class III gaming facility located on land separate from, and not part of, the tribe's reservation.  The district court issued a preliminary injunction against Bay Mills.  Bay Mills, in compliance with the preliminary injunction, shut down the casino and then filed an interlocutory appeal.  The Sixth Circuit vacated the injunction, holding that tribal sovereign immunity barred Michigan's suit against Bay Mills and that IGRA did not authorize the action.  The Supreme Court granted certiorari to consider whether

---

[2] The State's complaint in this case expressly relies on § 2710(d)(7) as a basis for its claims.  App. at 26.

17

tribal sovereign immunity barred Michigan's suit against Bay Mills.

In a 5-4 decision, the Supreme Court affirmed the Sixth Circuit's decision. In doing so, the Court began by noting that "Indian tribes are domestic dependent nations that exercise inherent sovereign authority" and possess "common-law immunity from suit traditionally enjoyed by sovereign powers." 134 S.Ct. at 2030 (internal quotation marks omitted). As a result, the Court held, "[u]nless Congress . . . authorized Michigan's suit, [Supreme Court] precedents demand[ed] that it be dismissed." Id. at 2032. Although Michigan argued "that IGRA indeed abrogate[d] the Tribe's immunity from the State's suit," the Court disagreed. Id. To be sure, the Court concluded that "IGRA partially abrogates tribal sovereign immunity in § 2710(d)(7)(A)(ii)[, by] . . . authoriz[ing] a State to sue a tribe to 'enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact.'" Id. (quoting IGRA). The Court emphasized, however, that "[a] State's suit to enjoin gaming activity *on* Indian lands . . . falls within § 2710(d)(7)(A)(ii); a similar suit to stop gaming activity *off* Indian lands does not." Id. (emphasis in original). And, although the State argued that the tribe's actions in "authoriz[ing], licens[ing], and operat[ing] th[e] casino from within its own reservation" constituted class III gaming activity, the Court disagreed. Id. (internal quotation marks omitted). Instead, the Court held, "numerous provisions of IGRA show that 'class III gaming activity' means just what it sounds like—the stuff involved in playing class III games." Id.

18

Consequently, the Court held, Michigan's suit to enjoin gaming outside of the tribe's reservation fell "outside § 2710(d)(7)(A)(ii)'s abrogation of immunity." Id.

The Court emphasized that, even though "a State lacks the ability to sue a tribe for illegal gaming when that activity occurs off the reservation, . . . a State, on its own lands, has many other powers over tribal gaming that it does not possess (absent consent) in Indian territory." Id. at 2034. For example, the Court noted, "Michigan could, in the first instance, deny a license to [the tribe] for an off-reservation casino." Id. at 2035. "And if [the tribe] went ahead anyway," the Court noted, "Michigan could bring suit against tribal officials or employees (rather than the Tribe itself) seeking an injunction for, say, gambling without a license." Id. Under Ex parte Young, 209 U.S. 123 (1908), the Court noted, "tribal immunity does not bar such a suit for injunctive relief against *individuals*, including tribal officers, responsible for unlawful conduct." Id. (emphasis in original). In addition, the Court noted, "if a State really wants to sue a tribe for gaming outside Indian lands, the State need only bargain for a waiver of immunity." Id. Indeed, the Court noted, IGRA expressly provides that "a State and tribe negotiating a compact 'may include . . . remedies for breach of contract,' 25 U.S.C. § 2710(d)(3)(C)(v)—including a provision allowing the State to bring an action against the tribe in the circumstances presented here." Id. "States," the Court emphasized, "have more than enough leverage to obtain such

19

terms because a tribe cannot conduct class III gaming on its lands without a compact, see § 2710(d)(1)(C), and cannot sue to enforce a State's duty to negotiate a compact in good faith."  Id.

*c) The parties' positions regarding Bay Mills*

In their supplemental briefs, the parties disagree on the impact of Bay Mills on this case.  The State argues that Bay Mills "fully supports the district court's rulings in this case because the Supreme Court affirmed that (1) 28 U.S.C. § 1331 provides subject matter jurisdiction for a claim arising under [IGRA], and (2) tribal sovereign immunity does not bar claims against individual tribal officials under the doctrine of Ex parte Young."  Aplee. Supp. Br. at 1.  In contrast, defendants argue that Bay Mills "requires remand with instructions to vacate the preliminary injunction and dismiss the complaint in this action."  Aplt. Supp. Br. at 2.

Turning first to the State's arguments, it is true that the Supreme Court in Bay Mills held that "[t]he general federal-question statute, 28 U.S.C. § 1331, gives a district court subject matter jurisdiction to decide any claim alleging a violation of IGRA," and that "[n]othing in [IGRA] § 2710(d)(7)(A)(ii) or any other provision of IGRA limits that grant of jurisdiction."  Bay Mills, 134 S.Ct. at 2029 n.2.  Thus, there can be no doubt that the district court had subject matter jurisdiction over the State's claim in this case that defendants violated IGRA.

What the State chooses to ignore, however, is the Supreme Court's related

20

note that the provisions of IGRA "may indicate that a party has no statutory right of action." Id. And that, we conclude, is precisely the situation here. Although the State's complaint alleges that defendants' efforts to conduct class III gaming violated IGRA because they occurred off Indian lands,[3] the fact of the matter is, as Bay Mills clearly held, that IGRA is concerned only with class III gaming on Indian lands. Id. at 2032 ("A State's suit to enjoin gaming activity *on* Indian lands . . . falls within § 2710(d)(7)(A)(ii); a similar suit to stop gaming activity *off* Indian lands does not.") (emphasis in original). Consequently, the State's complaint in this case, like the State of Michigan's complaint in Bay Mills, fails on its face to state a valid claim for relief under IGRA.

To be sure, the State's complaint also asserts that the defendants' activities in seeking to conduct class III gaming on the Property violated the provisions of the Tribal-State Gaming Compact. And, the State argues, Bay Mills makes clear that, consistent with the doctrine of Ex parte Young, tribal sovereign immunity does not bar claims against individual tribal officials. But the State again ignores two important points. First, when the Supreme Court in Bay Mills discussed the Ex parte Young doctrine, it did so in the context of noting that "Michigan could bring suit against tribal officials or employees (rather than the Tribe itself) seeking an injunction for" violations of Michigan state law, such as "gambling

---

[3] As we have noted, the State's complaint specifically alleged that the Property at issue did not qualify as the Tribe's "Indian lands" under IGRA.

21

without a license." <u>Bay Mills</u>, 134 S.Ct. at 2035. Notably, the Supreme Court did not discuss whether a state could file suit against individual tribal officers for violating an IGRA-mandated tribal-state gaming compact. Second, in any event, the Tribal-State Gaming Compact at issue in this case effectively forbids such a suit. Part 12 of the Tribal-State Gaming Compact strictly limits the remedies available "[i]n the event that either party to this Compact believes that the other party has failed to comply with any requirement of this Compact." App. at 715. Specifically, Part 12 provides that "either party may refer a dispute arising under this Compact to arbitration under the rules of the American Arbitration Association . . . , subject to enforcement or pursuant to review as provided by paragraph 3 of this Part by a federal district court." <u>Id.</u> Thus, the State is clearly precluded by Part 12 from suing the defendant tribal officials in federal court for purported violations of the Tribal-State Gaming Compact.[4]

For these reasons, we conclude the district court erred in granting the State's motion for preliminary injunction and that the State's complaint fails to state a claim upon which relief can be granted.

---

[4] This was also the case in <u>Bay Mills,</u> where the compact at issue, "instead of authorizing judicial remedies, sen[t] disputes to arbitration and expressly retain[ed] each party's sovereign immunity." <u>Bay Mills</u>, 134 S.Ct. at 2035. The Supreme Court emphasized that "Michigan—like any State—could have insisted on a different deal." <u>Id.</u> The same holds true here: the State of Oklahoma could have insisted on a compact that allowed it to sue the Tribe or tribal officials in federal court for violations of the compact, but it failed to do so.

III

We REVERSE and REMAND to the district court with instructions to vacate its preliminary injunction and to dismiss the State's complaint with prejudice.[5]  The State's motion to strike non-record materials from the appendix and the State's motion for leave to file surreply are DENIED as moot.

---

[5] We emphasize that our holding does not, of course, leave the Tribe free to proceed with class III gaming activities on the Property.  The NIGC chairwoman's May 25, 2012 letter to the Tribe, though not "final agency action," effectively prohibits the Tribe from conducting class III gaming activities on the Property.  And the State, to the extent it believes the Tribe is violating the Tribal-State Gaming Compact, remains free to resolve its concerns by way of arbitration.