COLORADO COURT OF APPEALS           **2017COA112**

---

Court of Appeals No. 16CA1979
City and County of Denver District Court No. 16CV31444
Honorable Shelley I. Gilman, Judge

---

EnCana Oil & Gas (USA), Inc.,

Plaintiff-Appellant,

v.

Sally Miller; Barclay Farms, LLC; Joan Elaine Brehon; David Furlong and
Joyce Furlong, as Co-Trustees for the Janette Foote Estate; Niles Miller; White
River Royalties, LLC; Whitney Brace, as Trustee for the T.E. McClintlock Trust;
and Helen Nelson, as Trustee for the Edwin Miller Trust,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Dailey and Bernard, JJ., concur

Announced August 10, 2017

---

Welborn Sullivan Meck & Tooley, P.C., Jens Jensen, Brian S. Tooley, Samuel S.
Bacon, Denver, Colorado, for Plaintiff-Appellant

Law Offices of George A. Barton, P.C., Stacy A. Burrows, George A. Barton,
Robert G. Harken, Overland Park, Kansas, for Defendants-Appellees

¶ 1    A certified class of Colorado oil and gas royalty owners (the Class) and EnCana Oil & Gas (USA), Inc. (EnCana), were involved in litigation beginning in 2005 over EnCana's alleged underpayment of royalties on natural gas it produced.  In 2008, EnCana and the Class entered into a settlement agreement that detailed the payment of funds to settle past claims, established the methodology EnCana would use for future royalty payments, and included an arbitration clause.  The district court's final judgment approved and incorporated the settlement agreement, dismissed the 2005 case with prejudice, and reserved jurisdiction to enforce the agreement. In 2016, Colorado oil and gas royalty owners Sally Miller; Barclay Farms, LLC; Joan Elaine Brehon; David and Joyce Furlong, as Co-Trustees for the Janette Foote Estate; Niles Miller; White River Royalties, LLC; Whitney Brace, as Trustee for the T.E. McClintlock Trust; and Helen Nelson, as Trustee of the Edwin Miller Trust (collectively Owners), purporting to act on behalf of the Class, filed a demand for arbitration alleging that EnCana had underpaid royalties owed to members of the Class in violation of the 2008 settlement agreement.  EnCana quickly filed a new case in district court asserting that (1) the Class ceased to exist when the 2005

1

case was dismissed with prejudice in 2008 and (2) the 2008 settlement agreement did not authorize arbitration on a class-wide basis. In September 2016, the district court issued an order finding that the Class had not ceased to exist, deciding that the claims between EnCana and the Class should be resolved in class-wide arbitration, and entering summary judgment against EnCana. EnCana now appeals the district court's September 2016 order. We affirm.

## I. Background

¶ 2    In the 2005 case, *Miller v. EnCana Oil & Gas (USA) Inc.*, No. 05CV2753 (City & Cty. of Denver Dist. Ct. Aug. 26, 2008), the then putative Class sued EnCana over EnCana's alleged underpayment of royalties for natural gas produced in Colorado. The Class sought damages and declaratory relief to determine the proper method for calculating future royalty payments where the Class members' royalty agreements were silent as to the deduction of post-production costs from royalty payments. In 2006, after briefing and a two-day evidentiary hearing, the district court certified the Class pursuant to C.R.C.P. 23(b)(3). Notice of the

certification was mailed to approximately 6000 Class members and about 150 members opted out of the Class.

¶ 3     In 2008, EnCana and the Class entered into a settlement agreement stating that EnCana's payment of $40,000,000 to the Class resolved all disputes concerning natural gas production through December 31, 2008.  EnCana and the Class further agreed on a royalty payment methodology for natural gas production on or after January 1, 2009, allocating post-production costs based on the location of the well(s) processing the gas.[1]  The agreement contains the following arbitration clause:

> In the event of a dispute over EnCana's payment of royalty under [the methodology for calculating royalties on gas produced on or after January 1, 2009], such dispute will be resolved in an arbitration administered by the Judicial Arbiter Group ("JAG"), with the Honorable Richard W. Dana as Arbitrator.  The arbitration will be conducted in accordance with the rules (but not under the administrative auspices) of the American Arbitration Association [AAA] then in effect.  If Judge Dana is unable to serve as Arbitrator, the Arbitrator will be designated by JAG from among its panel of Arbitrators.  If JAG no

---

[1] For payment of royalties on gas produced on and after January 1, 2009, section 10 of the agreement places Class members into six geographically divided groups, which we refer to as "subclasses," although the settlement agreement did not explicitly do so.

> longer exists, the Parties will attempt to agree on an arbitrator, and if unable to do so, arbitration will be conducted under the rules of the [AAA] then existing.

As relevant here, the agreement (1) defines "Parties" as "Plaintiffs, Class Members and EnCana, each of whom individually may be referred to as a 'Party'"; (2) adopts Colorado law; (3) provides that it runs with the land; and (4) states that it is binding upon "EnCana and the Class Members and their respective . . . successors and assigns, with respect to both the current interests owned by EnCana and Class Members and any additional interest that either EnCana or Class Members acquire under the Royalty Agreements."[2]

¶ 4      The district court preliminarily approved the settlement agreement, and a notice of the proposed settlement was mailed to the Class members informing them of the settlement terms and their right to object.  Based upon the evidence adduced at the class fairness hearing, the district court approved the settlement as being "fair, reasonable, bona fide and adequate to the Settlement Class."  The district court then entered a final judgment approving the

---

[2] The agreement defines "Royalty Agreements" as "all instruments . . . conveying or reserving royalty or overriding royalty interests, under which any Class Member receives or has received royalty payments, and therefore is subject to this Agreement."

settlement agreement "between EnCana and [the] Class[,] except for those persons and entities [opting] out of the class," and dismissing the case with prejudice.  The judgment states that "[f]or production of Natural Gas . . . occurring from the Leases on and after January 1, 2009 and continuing for the respective lives of the Leases, EnCana (and its successors) shall calculate and pay Class Members (and their successors) royalties as set forth in the Agreement," consistent with the methodology and subclasses laid out in section 10 of the agreement.  The district court's judgment expressly

> reserves jurisdiction, without affecting the
> finality of this Final Judgment, over (a)
> implementing, administering and enforcing
> this Settlement and any award or distribution
> from the Settlement Funds; (b) disposition of
> the Settlement Funds; and (c) other matters
> related or ancillary to the foregoing.

The judgment incorporates the settlement agreement, specifying that the judgment and the settlement agreement "are to be construed together as one Settlement between the Parties."

¶ 5    In 2016, Owners, on behalf of the Class, filed a demand for class arbitration with JAG, alleging that EnCana violated the settlement agreement by underpaying royalties on natural gas produced since January 1, 2009.  EnCana responded by suing

Owners, in City and County of Denver District Court case 16CV31444, for declaratory relief. In a later motion, EnCana claimed that the settlement agreement did not authorize arbitration on a class-wide basis and requested that the district court decide the issue and stay arbitration. Responding to EnCana's motion, Owners did not oppose EnCana's request that the court, not the arbitrator, decide whether their agreement authorized class arbitration. The district court stayed arbitration until it resolved the disputed question.

¶ 6     Owners next moved for summary judgment on the issue of class arbitration, and EnCana later filed (1) a C.R.C.P. 56(h) motion asking the district court to decide that the Class ceased to exist after the 2008 dismissal with prejudice and (2) a cross-motion for summary judgment on the class arbitration issue. In September 2016, the district court issued an order finding that the Class had not ceased to exist and entering summary judgment in favor of Owners, deciding that the claims between EnCana and the Class should be resolved in class-wide arbitration.

¶ 7     EnCana now appeals the September 2016 order.

## II. The Class May Enforce the Settlement Agreement

¶ 8 EnCana contends that the district court erred in finding that the Class continued after the case was dismissed with prejudice in 2008. According to EnCana, C.R.C.P. 23 is a procedural tool facilitating the aggregation of claims and does not affect substantive rights or law; therefore, once the underlying case is dismissed, the class and its ability to bring new claims cease to exist. Otherwise, EnCana argues, the district court's obligation under C.R.C.P. 23(c)(1) — to continually and rigorously analyze whether proceeding as a class is appropriate — would continue beyond the case's dismissal with prejudice. EnCana asserts that the district court's September 2016 order lacked sufficient C.R.C.P. 23(c)(1) analysis regarding (1) the named representatives' current ability to adequately represent the Class; (2) the current composition of the Class; and (3) the alleged unilateral substitutions of Class counsel. EnCana also argues that Class counsel did not provide sufficient notice of the arbitration demand to Class members. We disagree.

### A. Preservation and Standard of Review

¶ 9 The parties agree that this issue was properly preserved.

7

¶ 10    When deciding a motion under C.R.C.P. 56(h), a district court may decide a legal question "[i]f there is no genuine issue of any material fact necessary for the determination of the question of law." We review a court's ruling on such a motion de novo. *Francis v. Aspen Mountain Condo. Ass'n*, 2017 COA 19, ¶ 7. Also, an arbitration clause in a settlement agreement is part of a contract, the interpretation of which is a matter of law that we review de novo. *See Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003).

## B.    Applicable Law

¶ 11    A district court "has inherent authority and jurisdiction to make such orders as are necessary to give effect to or enforce its prior decrees." *Mulei v. Jet Courier Serv., Inc.*, 860 P.2d 569, 571 (Colo. App. 1993) ("Although the trial court had dismissed the cause with prejudice, it retained jurisdiction to give effect to the settlement order."). Accordingly, a district court may issue an order dismissing a case with prejudice while retaining jurisdiction over a settlement agreement resolving the underlying dispute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994) ("[I]f the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal — either by

8

separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order[ — ] . . . a breach of the agreement" would be "a violation of the order."); *see Cross v. Dist. Court*, 643 P.2d 39, 41 (Colo. 1982) ("A compromise and settlement is, in effect, a contract to end judicial proceedings."); *see also Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195, 205 (2d Cir. 2016) ("Like consent decrees, settlement agreements are 'hybrid[s] in the sense that they are at once both contracts and orders; they are construed largely as contracts, but are enforced as orders.'") (alteration in original) (citation omitted).

## C.    Analysis

¶ 12     For two reasons, we determine that the Class survived the 2008 dismissal.  We also conclude that EnCana's remaining arguments regarding Rule 23 and Class counsel fail.

### 1.    The Certified Class Survives for the Life of the Agreement

¶ 13     First, the district court's dismissal order incorporated the settlement agreement and reserved jurisdiction to implement, administer, and enforce the "Settlement and any award or distribution from the Settlement Funds" and to address "other

9

matters related or ancillary" to said agreement. Because compliance with the settlement agreement became a part of the order of dismissal, the district court retains jurisdiction to give effect to the agreement. *See Mulei*, 860 P.2d at 571; *accord Kokkonen*, 511 U.S. at 381; *Rothstein*, 837 F.3d at 205. Until the terms of the agreement are satisfied, the subclasses identified in the agreement retain the right to enforce that agreement.

¶ 14     Second, the obligations placed on the settling parties did not end with the 2008 dismissal. Rather, the agreement continues for the respective "lives of the Leases" or Royalty Agreements covered by the settlement agreement and expressly benefits and burdens successors and assigns of the Parties. *See Allen*, 71 P.3d at 378 (stating that we must construe a settlement agreement according to the plain and ordinary meaning of its terms in a manner that allows each party to receive the benefit of the bargain, and the scope of the agreement must reflect the reasonable expectations of the parties). Any successors or assigns[3] — who step into the shoes of a Class

---

[3] The identities and interests of those successors or assigns, if disputed, are for the arbitrator to decide. *See Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 181 (3d Cir. 2010) ("[I]n the absence of a threshold question regarding the validity of the arbitration

member concerning the royalties owed — are necessarily entitled to enforce the terms of the settlement agreement. *See Backus v. Apishapa Land & Cattle Co.*, 44 Colo. App. 59, 61, 615 P.2d 42, 44 (1980) (stating that an assignee of contract rights stands in the shoes of the assignor and may proceed in a contract action as if he were the assignor).

2.    The Agreement Contradicts EnCana's Additional Claims

¶ 15    We reject EnCana's claim that, if the Class survived the dismissal, the district court had an unending and unfulfilled duty under C.R.C.P. 23(c)(1) to rigorously analyze the Class' satisfaction of C.R.C.P. 23's requirements. The settlement agreement effectively endorsed the certified Class by creating, in section 10, geographically based subclasses to resolve any prospective royalty payment disputes. By accepting the six subclasses in the

---

agreement itself or the applicability of an arbitration agreement to a given dispute, the FAA 'requires courts to enforce privately negotiated agreements to arbitrate[.]'") (citation omitted); *Coors Brewing Co. v. Cabo,* 114 P.3d 60, 66 (Colo. App. 2004) ("[T]he arbitrator is the final judge of both fact and law."). EnCana suggests that the Class cannot bring new claims against EnCana or other people or entities outside of the scope of the original certification order, settlement, or judgment. We agree, *see Toothman v. Freeborn & Peters*, 80 P.3d 804, 810 (Colo. App. 2002), and we read the arbitration demand as merely seeking to enforce the settlement agreement, not as advancing new claims.

agreement, EnCana expressly agreed to work with those subclasses for the life of each Lease.

¶ 16    EnCana's arguments about the district court's alleged failure to satisfy Rule 23 are not persuasive.  Not only did the district court conduct a full class certification process — as reflected in the court's exhaustive twenty-two page order[4] — but EnCana endorsed and reformulated that class in the settlement agreement.  Because EnCana undertook to pay the subclasses (and their successors and assigns) until all its duties in the settlement agreement are satisfied (for the "life of the Leases"), the district court did not err in declining to engage in any further C.R.C.P. 23 analysis after the 2008 dismissal and judgment approving said agreement.

¶ 17    To the extent EnCana suggests that Class counsel seeks to represent non-Class members, the merits (or lack thereof) of the subclasses' claim for prospective royalty payments (post January 1, 2009) will be addressed in the arbitration proceeding, consistent with the AAA Rules, as the parties agreed.  *See Puleo v. Chase Bank*

---

[4] The order references a two-day class certification hearing. Although the transcript of that hearing does not appear to be in our record, an appellant's failure to provide a complete record allows us to presume the record supports the district court's decision.  *See In re Marriage of Dean*, 2017 COA 51, ¶ 13.

*USA, N.A.*, 605 F.3d 172, 181 ("[I]n the absence of a threshold question regarding the validity of the arbitration agreement itself or the applicability of an arbitration agreement to a given dispute, the FAA 'requires courts to enforce privately negotiated agreements to arbitrate[.]'") (citation omitted).

¶ 18    It is not evident that EnCana or its counsel — who are not parties to the fee agreement between the Class and its counsel — are the appropriate parties to complain that different lawyers associated with Class counsel's firm have joined the case. *See Abbott v. Kidder Peabody & Co.*, 42 F. Supp. 2d 1046, 1050 (D. Colo. 1999) (holding — where the defendants moved to declare void the plaintiffs' attorney-client contract and to disqualify the plaintiffs' counsel — that (1) the defendants had no standing under Colorado law to challenge the enforceability of the attorney-client representation contract between the plaintiffs and their counsel and (2) although courts generally refuse to disqualify an attorney for a conflict of interest where the attorney's former client has not moved for disqualification, the defendants had standing to seek disqualification only because the interests of the public were so greatly implicated that an apparent conflict of interest tended to

undermine the validity of the proceedings). When the district court certified the Class, it necessarily determined that Class counsel could adequately represent the Class members. *See Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121-22 (9th Cir. 2002). In any event, EnCana provides no authority to support its objection to the participation of another lawyer from Class counsel's law firm, or to contest the absence of one of the Class' initially appointed lawyers.

¶ 19 We next reject EnCana's contention that Class counsel did not provide sufficient notice of the arbitration demand to Class members in violation of their right to due process. A division of this court has held, and EnCana and the Class do not dispute, that the Class members received sufficient notice after the Class was certified and after the district court preliminarily approved the settlement agreement. *See Miller v. EnCana Oil & Gas (USA) Inc.*, (Colo. App. No. 08CA2131, June 11, 2009) (not published pursuant to C.A.R. 35(f)). Our review of the 2016 arbitration demand leads us to conclude that it does not bring claims different from those resolved by the 2008 settlement agreement; rather, it merely seeks to enforce that agreement. Therefore, no additional notice was required before filing the 2016 arbitration demand. If the arbitrator

14

later believes further notice is appropriate, the arbitrator can address the issue in the arbitration proceeding.

¶ 20    The district court's ruling did nothing more and nothing less than give effect to the settlement agreement.  Thus, there is no error.

## III.    Class Arbitration

¶ 21    Next, EnCana argues that the district court erred in determining that the settlement agreement contains a contractual basis to conclude that EnCana and the Class agreed to class arbitration.  EnCana contends that, because the arbitration clause is silent on the matter of class arbitration, the district court should have presumed that the parties agreed to bilateral arbitration only. EnCana further argues that the district court erred in granting summary judgment in favor of Owners on the issue of class arbitration because there was a genuine issue of material fact as to whether the parties agreed to class arbitration.  We are not persuaded.

### A.    Preservation and Standard of Review

¶ 22    The parties agree that this issue has been properly preserved.

¶ 23    We review a district court's order granting summary judgment de novo. *Lewis v. Taylor*, 2016 CO 48, ¶ 13. "Summary judgment is appropriate only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting C.R.C.P. 56(c)).

¶ 24    Arbitration is a matter of contract, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *see also Taubman Cherry Creek Shopping Ctr., LLC v. Neiman-Marcus Grp., Inc.*, 251 P.3d 1091, 1094 (Colo. App. 2010), the interpretation of which presents a legal question that we review de novo while applying state law.[5]

---

[5] Arbitration provisions normally deprive the district court of jurisdiction over certain matters related to a settlement agreement, but here EnCana and the Class agreed that the district court, not the arbitrator, should resolve their present dispute. Thus, neither the district court nor this court has any reason to address the issue of who should decide whether the arbitration clause in the settlement agreement refers to class or bilateral arbitration. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (noting that, regarding arbitration proceedings, a court decides substantive issues and the arbitrator decides procedural issues absent "an agreement to the contrary"); *but see Oxford Health Plans LLC v. Sutter*, 569 U.S. ___, ___ n.2, 133 S. Ct. 2064, 2068 n.2 (2013) (recognizing that "whether the availability of class arbitration is a question of arbitrability" remains an open question). The

*See Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017); *Radil v. Nat'l Union Fire Ins. Co. of Pittsburg*, 233 P.3d 688, 692 (Colo. 2010); *Premier Farm Credit, PCA v. W-Cattle, LLC*, 155 P.3d 504, 517 (Colo. App. 2006).

### B.  Applicable Law

¶ 25    "Arbitration is . . . a private means of dispute resolution wherein the parties have freedom to structure both the boundaries of the arbitration award and the procedures under which the arbitrator will arrive at his decision."  *S. Wash. Assocs. v. Flanagan*, 859 P.2d 217, 220 (Colo. App. 1992); *see PoolRe Ins. Corp. v. Organizational Strategies, Inc.*, 783 F.3d 256, 262 (5th Cir. 2015).  A valid arbitration clause in a settlement agreement "divests trial courts of jurisdiction over all questions that are to be submitted to arbitration, pending the conclusion of arbitration," but a district court retains jurisdiction over the remaining questions not subject to the parties' agreement.  *Lane v. Urgitus*, 145 P.3d 672, 679 (Colo. 2006); *see also Oklahoma v. Hobia*, 775 F.3d 1204, 1213 (10th Cir. 2014).

---

parties also agree that the Federal Arbitration Act, 9 U.S.C. §§ 1-307 (2012), and Colorado law apply.  The parties do not argue that those laws conflict here.

17

¶ 26 As a part of the settlement agreement, class arbitration is a matter of consent. *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("[A] party may not be compelled . . . to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."). While the question of what contractual basis may support a finding that the parties authorized class arbitration remains undecided, *see id.* at 687 n.10, it is clear that an agreement compelling the parties to submit to class arbitration may be implicit or explicit. *See id.* at 685; *Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 121 (2d Cir. 2011) ("The [*Stolt-Nielsen*] Court contemplated that an arbitration agreement may contain an implicit agreement to authorize class arbitration[.]"). But, an implicit agreement to class arbitration cannot be presumed "solely from the fact of the parties' agreement to arbitrate." *Stolt-Nielsen*, 559 U.S. at 685 (concluding that there was no contractual basis for ordering class procedures where the parties stipulated that they never reached any agreement on class arbitration and that their agreement was silent on the matter).

¶ 27 To best effectuate the parties' intent, "[w]e must construe the terms of the [arbitration] agreement in a manner that allows each

18

party to receive the benefit of the bargain, and the scope of the agreement must faithfully reflect the reasonable expectations of the parties." *Allen*, 71 P.3d at 378; *see also Moss v. First Premier Bank*, 835 F.3d 260, 264 (2d Cir. 2016) ("As with any contract, 'the parties' intentions control.'") (citation omitted). In determining the scope of an arbitration clause in a settlement agreement, we look to "the wording in order to ascertain and give effect to the mutual intent of the parties as well as the subject matter," the "purposes to be accomplished," and the circumstances surrounding the agreement's formation. *Lane*, 145 P.3d at 677, 679. If ambiguities are found in the clause, we must compel arbitration unless we can say "with positive assurance" that the arbitration clause is not susceptible of any interpretation that encompasses the subject matter of the dispute. *Allen*, 71 P.3d at 378 (citation omitted). Moreover, a "broad or unrestricted" arbitration clause makes the strong presumption favoring arbitration apply with even greater force. *Id.* (citation omitted).

¶ 28 Furthermore, we interpret an agreement "in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." *Gagne*

19

*v. Gagne*, 2014 COA 127, ¶ 53 (quoting *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984)). "[A] contract should never be interpreted to yield an absurd result." *Atmel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 793 (Colo. App. 2001), *abrogated on other grounds by Ingold v. AIMCO/Bluffs, L.L.C. Apartments*, 159 P.3d 116 (Colo. 2007).

## C. Analysis

¶ 29    Here, it is undisputed that the claims concerning EnCana's compliance with the settlement agreement will be resolved by arbitration and that the courts, not the arbitrator, will decide whether arbitration shall occur on a class-wide or individual basis.[6] The only question for us, then, is whether EnCana and the Class authorized class arbitration in their settlement agreement.

¶ 30    As a preliminary matter, we reject EnCana's repeated argument that we must reverse the district court's ruling on class arbitration because this ruling depends upon the allegedly erroneous finding that the Class survived the 2008 dismissal. As discussed above, neither applicable law nor the terms of the

---

[6] The parties agree that the duty to arbitrate is valid and that the court should decide their dispute over the scope of the agreement's arbitration clause. *See supra* note 5.

20

settlement agreement support EnCana's claim that the Class does not exist.

¶ 31     Where, as here, a settlement agreement explicitly names all members of a certified class as a party to the agreement, frames the pertinent disputes in class-wide or subclass-wide terms, and gives relief on a class-wide or subclass-wide basis, the arbitration clause's context persuasively demonstrates an agreement to class arbitration, rather than bilateral arbitration.

¶ 32     Looking to the plain language, the settlement agreement states that it "is entered into by [Owners] and each member of the Class [and EnCana]."  The agreement defines the following terms:

- "Class" means the Class certified in 2006;

- "Class Members" means "each member of the Class, including [Owners, and excluding] the persons and entities who elected to opt out of the Class in response to the Notice of Certification of Class Action"; and

- "Parties" means "[Owners], Class Members and EnCana, each of whom individually may be referred to as a 'Party.'"

The Class is integral in defining the disputes covered by the agreement and the agreement's class-wide relief.  Adopting

21

EnCana's proffered interpretation of the settlement agreement would require us to ignore the class-wide framing of the disputes and relief and read the repeatedly used word "Class" out of the settlement agreement, replacing it with something like "individual royalty owner." Such an interpretation contradicts the agreement's plain language. *See Lane*, 145 P.3d at 677, 679.

¶ 33 The settlement agreement broadly provides, without limitation, that Class members must resort to arbitration to settle any "dispute over EnCana's payment of royalty." *See Shell Oil Co. v. CO2 Comm., Inc.*, 589 F.3d 1105, 1109 (10th Cir. 2009) (enforcing arbitration provisions in class action settlement agreement, which required arbitration of all disputes "arising from or relating in any way to" the agreement); *see also Allen*, 71 P.3d at 379 (holding that a wrongful death claim brought by a woman was within the scope of an arbitration agreement between a healthcare provider and the woman's husband where the agreement covered "'*any claim* of medical malpractice' and any claim brought '*[f]or any reason*'"); *see generally* 1 *McLaughlin on Class Actions* § 2:13 (13th ed. 2016) (observing that, to date, "the vast majority of [AAA Clause

22

Construction Awards] have interpreted 'silent' clauses to authorize class arbitration").

¶ 34     If EnCana were to fail to employ the methodology established by the settlement agreement, that failure would necessarily affect all members of at least one subclass, not merely an individual Class member.  No reasonable construction of the arbitration clause of this class action settlement agreement results in a prohibition of class-wide relief.  *See Allen*, 71 P.3d at 378 ("[T]he scope of the agreement must faithfully reflect the reasonable expectations of the parties.").  To conclude that the settlement agreement evidences that the parties contemplated engaging in approximately 5850 individual arbitrations[7] to resolve future disputes — rather than a single class (or subclass) arbitration challenging EnCana's compliance with the methodology established by the settlement agreement to resolve the class action lawsuit — would be absurd.  *See Atmel Corp.*, 30 P.3d at 793; *cf. Mork v. Loram Maint. of Way, Inc.*, 844 F. Supp. 2d 950, 952 (D. Minn. 2012) (concluding that

---

[7] Approximately 150 putative members opted out of the Class before the 2008 settlement.  Under EnCana's current reading of the arbitration clause, not only would an individual arbitration be required for each dispute of approximately 5850 Class members, but also for those of any successors and assigns.

where the parties agreed that the court had to order arbitration, but disagreed about whether collective arbitration was allowed, the breadth of the arbitration clause — covering "claims or disputes of any nature" — allowed for collective arbitration); *Smith & Wollensky Rest. Grp. v. Passow*, 831 F. Supp. 2d 390, 392 (D. Mass. 2011) (denying challenge to arbitrator's award where the arbitrator reasonably interpreted an arbitration clause — covering "any claim that, in the absence of this Agreement, would be resolved in a court of law under applicable" law — as being sufficiently broad to allow for arbitration of class action claims).

¶ 35 Further, the settlement agreement repeatedly refers to "the Parties" in provisions addressing EnCana and all Class members. For example, the agreement provides that, if the district court "approves this Settlement Agreement, then the Parties jointly shall seek entry of the Final Judgment." In comparison, EnCana and the Class utilized more descriptive language to refer to a specific party when they deemed it necessary. For example, the agreement contains provisions stating the following:

- "Each Party agrees to indemnify [from] all actions [that] *the released Party* may sustain[.]" (Emphasis added.)

- "Nothing in this Agreement shall [be] construed as a cross-conveyance or pooling of the Royalty Agreements which in any manner affects the right of *any separate Class Member* to deal with their *separate* property interests in the Royalty Agreements as their *sole and separate* property without regard to the rights and interests of *any other separate Class Member.*" (Emphasis added.)

- "Given the absence of any reliance by *one Party* upon any representation by *the other Party* other than as specifically set forth herein, [the] Parties agree that [their rights and obligations] with respect to the subject matter of this Agreement will be exclusively as set forth in this Agreement and the final Judgment." (Emphasis added.)

¶ 36     Accordingly, if EnCana and the Class had wanted the arbitration clause to refer to bilateral arbitration, the clause could have specified any or all of the following: (1) the subject disputes would be between EnCana and an individual Class member; (2) the individual parties involved in such a dispute would attempt to agree on an arbitrator; (3) both Parties would expressly waive class

arbitration; or (4) the arbitration would be conducted in accordance with the AAA rules then in effect with regard to bilateral arbitration and exclude the rules on class arbitration (the current AAA rules have been in effect since 2003, almost five years before the parties entered into the 2008 settlement agreement).[8]  *See* AAA, Supplementary Rules for Class Arbitrations (effective Oct. 8, 2003), https://perma.cc/RH8F-VQFB; *see also Fensterstock v. Educ. Fin. Partners*, 611 F.3d 124, 129 (2d Cir. 2010) (noting that the arbitration clause provided that arbitration "[c]laims must proceed on an individual (non-class, non-representative) basis"), *cert. granted, judgment vacated, and case remanded on other grounds sub nom. Affiliated Comput. Servs., Inc. v. Fensterstock*, 564 U.S. 1001 (2011); *La. Health Serv. Indem. Co. v. Gambro A B*, 756 F. Supp. 2d 760, 768 (W.D. La. 2010) (recognizing that sophisticated parties can write an arbitration clause to "specifically state that no class arbitration shall be permitted"); *Bonanno v. Quizno's Franchise Co.*, No. 06-CV-02358-CMA-KLM, 2009 WL 1068744 (D.

---

[8] Although the agreement's failure to expressly prohibit class arbitration cannot be the sole basis for concluding that the parties agreed to class arbitration, *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010), it remains a factor to consider.

Colo. Apr. 20, 2009) (examining a class action bar in a contract and concluding that it was not unconscionable under Colorado law). Instead, the arbitration clause reads that a future

> dispute will be resolved in an arbitration administered by [JAG] . . . [and] conducted in accordance with the rules . . . of the [AAA] then in effect. . . . If JAG no longer exists, the Parties will attempt to agree on an arbitrator, and if unable to do so, arbitration will be conducted under the rules of the [AAA] then existing.

Construing the agreement as a whole and seeking to harmonize all provisions, we conclude that the agreement's plain language evidences the parties' intent to allow class (or subclass) arbitration. *See Gagne*, ¶ 53.

¶ 37 Unlike the agreements in *Stolt-Nielsen*, 559 U.S. at 684, and its progeny, the arbitration clause at issue exists in the context of a class action settlement agreement that designates members of a certified class into six subclasses on the basis of geographic markers in order to address prospective royalty payments and related disputes. The arbitration clause is not part of a bilateral contract, such as one between an individual consumer and a corporate entity. *See, e.g., Bonanno*, 2009 WL 1068744, at *2. The

settlement agreement resolved the Class' claims on a class-wide basis by establishing a royalty payment methodology dependent on six designated subclasses of Class members and their successors and assigns — not by establishing approximately 5850 individual methodologies specific to each Class member.[9]  Therefore, the parties' intent to resolve their past and future disputes on a class-wide or subclass-wide basis is also apparent from the circumstances of the settlement agreement's formation.  *See Lane*, 145 P.3d at 679.

¶ 38    Because the settlement agreement's language and context evidence the parties' contemplation of class arbitration, we agree with the district court that summary judgment was proper on the issue of class arbitration because there was no genuine issue of material fact and Owners were entitled to judgment as a matter of law.  *See Lewis*, ¶ 13 (citing C.R.C.P. 56(c)); *Premier Farm Credit*, 155 P.3d at 517 (reasoning that the interpretation of a contract presents a question of law).

---

[9] An arbitration clause's mere presence in a class action settlement agreement may not be sufficient to demonstrate the parties' authorization of class arbitration.  But, as explained above, there is much more than the clause's mere presence in the class action settlement evidencing an agreement to class arbitration here.

## IV. Conclusion

¶ 39    The judgment is affirmed.

JUDGE DAILEY and JUDGE BERNARD concur.