# United States Court of Appeals

### For the Eighth Circuit

_____

No. 22-1138
_____

Core and Main, LP

*Plaintiff - Appellant*

v.

Ron McCabe; Dakota Supply Group, Inc.

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of Minnesota
_____

Submitted: October 19, 2022
Filed: March 1, 2023
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

LOKEN, Circuit Judge.

Core and Main, LP ("C&M"), headquartered in St. Louis, supplies water, wastewater, storm drainage, and fire protection products and services to commercial and governmental customers. On October 6, 2017, C&M expanded its Midwest operations by acquiring the assets of Minnesota Pipe and Equipment Company ("MPE"), which supplied the same products and services in areas of Minnesota and South Dakota. Six shareholders of MPE were parties to the Asset Purchase

Agreement and to a separate Noncompetition Agreement that was "a condition precedent to C&M's obligation" to close the purchase.

One of the shareholders, Ron McCabe, was part of MPE's management team. Based on McCabe's longstanding customer relations after thirty years of selling waterworks products, C&M and McCabe entered into a separate at-will Employment Agreement in which C&M employed McCabe as an Outside Sales Representative, agreeing to pay him at least $250,000 in commissions and bonus and to provide enumerated employee benefits in the first year. The Employment Agreement was made "contingent on the closing of the sale of [MPE] to [C&M]."

On June 1, 2021, unhappy that he had not become part of C&M's management team, McCabe quit his sales representative position. One week later, he started work at Dakota Supply Group, Inc. ("DSG"), a C&M competitor. Both the Noncompetition Agreement and the Employment Agreement included restrictive covenants and an "Entire Agreement" provision. C&M brought this diversity action against McCabe and DSG, asserting breach of the Employment Agreement's noncompete and confidentiality covenants, tortious interference, and related claims. The district court granted defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim.[1] The

---

[1]The district court declined to dismiss C&M's breach of loyalty claim, so its Order was not an appealable "final decision." 28 U.S.C. § 1291. The court then voluntarily dismissed the loyalty claim without prejudice. We have "repeatedly criticized the use of dismissals without prejudice to manufacture appellate jurisdiction in circumvention of the final decision rule." West Am. Ins. Co. v. RLI Ins. Co., 698 F.3d 1069, 1071 n.1 (8th Cir. 2012). This is not a jurisdictional issue because the district court has given the "clear and unequivocal manifestation" of its intent to enter a final decision that § 1291 requires. However, in most cases, a district court abuses its discretion "when it frustrates the limitations on federal appellate jurisdiction" in this manner. Great Rivers Coop. v. Farmland Indus., 198 F.3d 685, 689 (8th Cir. 1999). At oral argument, C&M agreed that we amend the dismissal of the claim to be with prejudice. We direct the district court to modify its Order of January 4, 2022.

principal issue on appeal is whether the court correctly concluded that the Noncompetition Agreement was a later agreement and therefore its Entire Agreement provision superseded the restrictive covenants in McCabe's Employment Agreement. Concluding that the breach of contract and tortious interference claims turn on fact-intensive issues that cannot be determined on the pleadings, we reverse the dismissal of those claims and otherwise affirm.

## I. Background

The Employment Agreement was set forth in a letter to McCabe dated September 25, 2017 from Don Taylor, C&M's "Sr. RVP North."  C&M offered McCabe the position of Outside Sales Representative on the terms stated, contingent on the closing of the sale of MPE to C&M.  After detailing the offered employment duties and terms of employment, the letter provided that, in exchange for "separate and independent consideration," McCabe agreed he would not, for a period of twelve months after termination of employment and within a territory limited to a 150 mile radius from "each office location from which you have provided services on behalf of [C&M]," (i) accept employment, otherwise assist, or have any beneficial interest in any person or entity that competes with C&M regarding its products as defined; (ii) compete with C&M by accepting employment, providing services, or otherwise assisting in business activities competing with C&M; and (iii) solicit or attempt to solicit business from any customer or supplier or prospective customer or supplier of C&M during the year prior to his termination, or solicit a reduction or end of their dealings with C&M.  McCabe also agreed to keep certain proprietary business and customer information confidential.  The Employment Agreement was signed by McCabe on October 2 and by Taylor on October 5, 2017.  McCabe began his employment on October 9.

The Noncompetition Agreement recited that it was made and entered into on October 6, 2017, and that "it is a condition precedent to C&M's obligations to close

-3-

the [Asset Purchase Agreement] that each of the Restricted Parties [MPE and the six shareholders] executes and delivers this Agreement." Section 2.1 provided:

> **Restrictions on Competition.** Each Restricted Party hereby agrees that, during the Term, it will not, directly or indirectly, anywhere in the Territory, except on behalf of C&M: (i) engage in the Business; (ii) engage in any business which is in competition with the Business; (iii) invest in any person or entity which is engaged in the Business or . . . any business which is in competition with the Business; or (iv) be employed by or be a director . . . of or provide consulting services to any person or entity which is engaged in the Business or . . . any business which is in competition with the Business.

Business was defined as purchasing, selling, or distributing a broad array of waterworks products and services. Term was defined as 42 months for MPE and two shareholders, and 24 months for the other shareholders, including McCabe. Territory was defined as Minnesota, Wisconsin, North Dakota, South Dakota, and Iowa.

The Noncompetition Agreement included an "Entire Agreement" provision:

> This Agreement constitutes the entire agreement by and between the parties pertaining to the subject matter hereof and supersedes all prior or contemporaneous agreements, letters of intent, understandings, negotiations and discussions of the parties, whether oral or written.

Similarly, the Employment Agreement provided that it "contains the entire agreement between [McCabe] and the Company with respect to your employment and all issues related to or arising from your employment and supersedes all prior oral and written agreements, discussions and understandings regard[ing] such subject."

C&M's Verified Complaint alleges that, in the spring of 2021, an important supplier reported that McCabe had encouraged a C&M customer to switch from using

-4-

the supplier's fire hydrants to a competitor's hydrants, a competitor whose hydrants DSG is authorized to sell more widely in Minnesota. On June 1, McCabe resigned in an e-mail to C&M, expressing dissatisfaction with certain people and referencing C&M business practices. That day, McCabe sent text messages to C&M customers that he had resigned and could be reached at a new number. The next day, C&M sent letters to McCabe and DSG demanding compliance with the Employment Agreement restrictions. In reply, Defendants' attorney asserted that C&M's letters were a "desire to retaliate in response to concerns regarding CM's business practices raised by Mr. McCabe with CM on June 1." That reply is the basis for C&M's claim that McCabe breached his confidentiality covenant by sharing confidential business information with DSG. C&M further alleges that McCabe violated the anti-solicitation restriction when he attended a Park Rapids Conference and provided information on fire hydrant installation and maintenance to members of the Rural Water Association.

Defendants moved to dismiss all claims, arguing, as relevant on appeal, (i) the Employment Agreement is not effective because C&M's CEO never signed it, as C&M procedures required; (ii) the Complaint fails to state a breach of contract claim because the Noncompetition Agreement's Entire Agreement provision superseded the Employment Agreement covenant not to compete for one year after termination, and McCabe's covenant not to compete in the Noncompetition Agreement has expired; and (iii) there is no plausible claim that McCabe breached any duty of confidentiality.

The district court dismissed all but the breach of loyalty claim, concluding (i) the breach of contract claim fails to state a claim because the Noncompetition Agreement superseded Employment Agreement covenants covering the same subject; (ii) the tortious interference claims fail because they are based on Employment Agreement restrictive covenants that are unenforceable; and (iii) C&M's Complaint fails to state a plausible breach of confidentiality claim.

## II. Discussion

"We review a Rule 12(b)(6) dismissal for failure to state a claim *de novo*, accepting all well-pleaded factual allegations as true and construing all reasonable inferences in the nonmoving party's favor." Vigeant v. Meek, 953 F.3d 1022, 1024 (8th Cir. 2020). To survive dismissal, complaints must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**A. The Breach of Contract Claim.** At the heart of this appeal is the difficult question whether the Employment Agreement is a "prior or contemporaneous" agreement "pertaining to the subject matter hereof" that was superseded by the Entire Agreement provision in the Noncompetition Agreement, rendering the restrictive covenants in the Employment Agreement on which C&M relies unenforceable.[2]

An Entire Agreement provision creates what is commonly called a "completely integrated agreement [that] discharges prior agreements to the extent that they are within its scope." Restatement (Second) of Contracts § 213(2) (1981). The parol evidence rule "is closely allied to the doctrine of integration." Millar Co. v. UCM Corp., 419 N.W.2d 852, 855 (Minn. App. 1988).[3] "[I]f a contract is a complete

---

[2]The Noncompetition Agreement, the basis for Defendants' motion to dismiss, was not referred to in C&M's Complaint. We agree with the district court it is a document "integral to the claim" that may be considered in ruling on a Rule 12(b)(6) motion. See Zean v. Fairview Health Servs., 858 F.3d 520, 526 (8th Cir. 2017).

[3]The Noncompetition Agreement provides that Missouri law governs its interpretation. The Employment Agreement has no contractual choice-of-law provision, so presumably a Minnesota forum would apply Minnesota choice-of-law principles to resolve any conflict. The district court did not consider this question,

integration of the parties' agreements, prior agreements *within the scope of the contract* are discharged regardless of consistency." Stromberg v. Smith, 423 N.W.2d 107, 109 (Minn. App. 1998) (emphasis in original, citing Restatement 2d § 213). A prior agreement "is not superseded or invalidated by a subsequent integration if it is not inconsistent with the integrated contract and would naturally be made as a separate agreement." Millar, 419 N.W.2d at 855 (citation omitted).

"The crucial issue in determining whether there has been an integration is whether the parties intended their writing to serve as the exclusive embodiment of their agreement." Spark Connected, LLC v. Semtech Corp., No. 4:18-cv-748, 2020 WL 6118575, at *5 (E.D. Tex. Oct. 16, 2020) (quotation omitted). The Comment to Restatement 2d § 213 explains that even if an agreement is completely integrated:

> the court in addition . . . must determine that the asserted prior agreement is within the scope of the integrated agreement. Those determinations are made in accordance with all relevant evidence, and require interpretation both of the integrated agreement and of the prior agreement.

As the district court recognized, "while extrinsic evidence may be admissible to clarify ambiguous terms in a written contract, it is not admissible to vary terms whose meaning is plain." Hayle Floor Covering, Inc. v. First Minn. Const. Co., 253 N.W.2d 809, 812 (Minn. 1977). Whether a contract is unambiguous is determined by the court, giving contract terms "their plain, ordinary, and popular meaning to give effect to the intention of the parties." Kremer v. Kremer, 912 N.W.2d 617, 626 (Minn. 2018). A court's task is to give effect to the parties' intent, looking at the

and the parties did not brief it on appeal. Defendants cite Missouri cases, but none addressed the issues on appeal. We leave this issue to the district court on remand. Our research has not revealed any relevant conflict between Minnesota and Missouri law, in which case the issue should be avoided. See Ronnoco Coffee, LLC v. Westfeldt Bros. Inc., 939 F.3d 914, 920 (8th Cir. 2019).

"obvious purpose of the contract [here, the contracts] as a whole." Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp., 279 N.W.2d 349, 354 (Minn. App. 1979) (cleaned up). Thus, if the plain meaning of the Entire Agreement provision in the Noncompetition Agreement read in the context of the agreements that accompanied the sale of MPE to C&M establishes that the Employment Agreement was *not* a superseded "prior or contemporaneous agreement," *or* if the Entire Agreement provision was ambiguous in this regard so that extrinsic evidence must be considered, then it was error to grant defendants' motion to dismiss the breach of contract claim.

The Entire Agreement provision in the Noncompetition Agreement only supersedes prior and contemporaneous agreements "pertaining to the subject matter hereof." We assume that the sophisticated drafters of this Agreement intended that term to adopt the established legal principle that a completely integrated agreement only discharges prior agreements "to the extent that they are within its scope." Restatement 2d § 213(2). The district court concluded that the "most natural meaning of 'the subject matter hereof' is that it applies to the sole subject of the agreement -- noncompetition." But that purely textual analysis ignores the Restatement's direction that determining the scope of a complete integration clause "require[s] interpretation both of the integrated agreement and the prior agreement" to determine the parties' intent. Here, the required analysis produces strong contrary signals:

First, it is not uncommon for the purchaser of a small or mid-size business paying for its goodwill and customer relations to require the seller's shareholders and managers to agree to sale-of-business noncompete covenants that are judicially enforceable if reasonable. If the purchaser agrees to employ the seller's key shareholders or managers after the acquisition, it is also not uncommon to require the new employees to agree to noncompete covenants in an employment agreement, which are viewed with disfavor if they will interfere with the employee's ability to pursue his livelihood after termination but are judicially enforceable if they reasonably avoid that sin. Both are noncompetition covenants. But they typically

-8-

have significantly different terms, and courts view them differently. As the Court of Appeals of Georgia concluded, "the noncompete covenant ancillary to the sale of the business relates to subject matter entirely different from that of the noncompete covenant ancillary to [the seller's] employment as a manager with [the buyer]." Attaway v. Republic Servs. of Ga., LLP, 558 S.E.2d 846, 848 (Ga. App. 2002).

Second, these two types of covenants may be contained in a single noncompetition agreement if the seller's only shareholder or owner is employed by the purchaser post acquisition, as in Progressive Techs., Inc. v. Chaffin Holdings, Inc., 33 F.4th 481, 484 (8th Cir. 2022). In that case, there was no integration clause issue -- both of the different noncompetition restraints were obviously intended by the parties, and the issue was whether the covenant with the longer duration on which the plaintiff relied was reasonable. Here, by contrast, the Noncompetition Agreement included additional selling-shareholder parties to whom the additional employment covenants should not apply. That no doubt explains why the covenants in C&M's Employment Agreement with McCabe contain both different and additional terms -- different durations, different covered territories, and non-solicitation restrictions common to employment agreements. See id. at 484, 486. That the covenants are in different agreements brings the integration clause issue into play, but it should not change the result. Indeed, the presence of additional parties in the Noncompetition Agreement supports the conclusion that it was not intended to supersede the Employment Agreement, whether or not the latter was "prior or contemporaneous." See Dunn v. FastMed Urgent Care PC, 424 P.3d 436, 441-42 (Ariz. App. 2018).

In these circumstances, we agree with C&M that it is at least plausible the two Agreements covered different subject matters, making Rule 12(b)(6) dismissal inappropriate. The Noncompetition Agreement restricting MPE shareholders from engaging or investing in a competing business was geographically broad (States where MPE competed with C&M), but its duration was precisely limited to a specific term for each restricted party (for McCabe, two years after the purchase closing). By

contrast, in the Employment Agreement, McCabe agreed to restrictions directly tied to his expected role as a C&M sales representative, including non-solicitation covenants, with a more limited geographic scope (150 miles from every office where McCabe worked), and a more limited but uncertain duration (12 months after his employment ended).

In addition, we conclude that, in the context of the multiple agreements that completed the Asset Purchase transaction, the term "prior or contemporaneous" in the Noncompetition Agreement's Entire Agreement provision is ambiguous. The Employment Agreement was "contingent on the closing of the sale." The Noncompetition Agreement was a "condition precedent" to C&M's obligations to close the sale. Thus, in reality, regardless of when each Agreement was signed, the Noncompetition Agreement was a condition *precedent* to the Employment Agreement. The Employment Agreement was signed by C&M the day before the date of the Noncompetition Agreement. In determining whether a contract is ambiguous, a court's task is to give effect to the parties' intent, looking at the obvious purpose of the contracts as a whole. See Republic Nat'l Life Ins. Co. v. Lorraine Realty Corp., 279 N.W.2d 349, 354 (Minn. App. 1979). For purposes of applying the law of completely integrated contracts, which is more important, reality or the date or dates the contracts were signed? The answer to that question calls for extrinsic evidence, so this essential term of the contract is ambiguous and dismissal improper.

For these reasons, we conclude that at the very least, C&M plausibly *pleaded* that McCabe breached the Employment Agreement. Whether that Agreement was "within [the] scope" of the Noncompetition Agreement cannot be determined as a matter of law from the pleadings alone. "While the district court's interpretation of the [Noncompetition] Agreement is certainly plausible, we cannot agree it is the only reasonable interpretation." Rosemann v. Roto-Die, Inc., 276 F.3d 393, 399 (8th Cir. 2002). In Rosemann, applying Missouri law, we concluded the contract language was

-10-

ambiguous, looking at the context of the entire agreement, and reversed the grant of summary judgment that was based on the district court's interpretation. Id.

Defendants contend that C&M cannot disavow its "clear position" that the subject matter of the two restrictive covenants was the same, "to protect the customer goodwill and assets that [MPE] sold to [C&M]." The Supreme Court of Minnesota will uphold a reasonable covenant in an employment agreement "designed to protect the employer against the deflection of trade or customers by the employee by means of the opportunity which the employment has given him." Bennett v. Storz Broadcasting Co., 134 N.W.2d 802, 808 (Minn. 1965). Likewise, sale-of-business covenants protect the purchaser from competition that lessens the value of the assets purchased by "deflect[ing] trade or customers." That sale-of-business covenants and employment covenants protect the same legitimate interest does not establish that the former are "within [the] scope" of the latter.

Defendants argue: (i) even though the parties operated under the Employment Agreement for years, it is not effective because it was never signed by C&M's CEO, as C&M's internal procedures required; and (ii) no "legitimate employer interest" not "broader than necessary" justifies the noncompete provisions, as Minnesota law requires. See Kallock v. Medtronic, Inc., 573 N.W.2d 356, 361 (Minn. 1998). The district court did not address these issues, and we decline to address them in the first instance. Of course, if the Employment Agreement's noncompete restrictions are not superseded by the Noncompetition Agreement's integration clause, the reasonableness of those restrictions will be a primary issue on remand. "[T]he reasonableness of a restrictive covenant clause is a question of fact." Dean Van Horn Consulting Assocs., Inc. v. Wold, 395 N.W.2d 405, 408 (Minn. App. 1986).

**B. Tortious Interference Claims.** Because the district court dismissed C&M's claims for tortious interference with contractual relationship and prospective contractual relationships based on its finding that no Employment Agreement

-11-

noncompete provision was operative, we also reverse the dismissal of those claims. Defendants make no contrary argument on appeal.

**C. Breach of Confidentiality Claim.** Count II of C&M's Verified Complaint alleged that McCabe breached the duty of confidentiality in Paragraph G of the Employment Agreement "when he shared information about Core and Main's billing practices with DSG's attorney," as evidenced by the attorney's letter to C&M referencing "concerns regarding CM's business practices raised by Mr. McCabe with CM on June 1." The district court dismissed this claim, explaining:

> McCabe's [June 1] resignation email does not contain any information about Core and Main's billing practices, other than a vague reference to "issues with certain people and practices at Core and Main" and a request to receive commissions on products sold to date. The letter contains no specifics about Core and Main's business or billing practices. Core and Main's vague factual allegations do not plausibly allege a breach of the duty of confidentiality.

We agree. The elements of a breach of confidentiality claim are:

> (1) the protected matter is not generally known or readily ascertainable, (2) it provides a demonstrable competitive advantage, (3) it was gained at expense to the employer, and (4) it is such that the employer intended to keep it confidential. Cherne Indus., Inc. v. Grounds & Assocs., Inc., 278 N.W.2d 81, 90 (Minn. 1979).

The attorney's letter to C&M and McCabe's June 1 email to which the attorney referred are exhibits to C&M's Verified Complaint. The attorney's vague reference to McCabe's concern about C&M "business practices," and the gripes of a resigning-employee expressed in McCabe's email to C&M, do not come close to pleading a plausible claim that McCabe disclosed to DSG's attorney information that constituted "protected matter" supporting a breach of confidentiality claim. Conclusory

-12-

assertions are "not entitled to be assumed true." Iqbal, 556 U.S. at 681. Thus, as in Twombly, the Verified Complaint has not "nudged [C&M's Count II] claims across the line from conceivable to plausible." 550 U.S. at 570. Count II was properly dismissed.

**D. A Procedural Issue.** Finally, C&M argues the district court erred by not dismissing without prejudice so that C&M could amend its Verified Complaint that was filed in state court because "Minnesota does not follow Twombly or Iqbal."

"[A] district court in granting a motion to dismiss is not obliged to invite a motion for leave to amend if plaintiff did not file one." United States v. Mask of Ka-Nefer-Nefer, 752 F.3d 737, 742 (8th Cir. 2014). Here, the case was removed to federal court in June 2021, defendants moved to dismiss in July, the district court dismissed all but one claim in December, and C&M filed a notice of dismissal of the final claim in January 2022. Thus, for more than half a year, C&M chose not to file a motion for leave to amend along with the amended pleading that a motion to amend requires. "[T]he district court had no reason to question" C&M's decision "to stand on and defend its original complaint." Id. at 742.

## III. Conclusion

The judgment of the district court dismissing C&M's breach of contract, tortious interference with contractual relationships, and tortious interference with prospective contractual relationships claims is reversed and the case is remanded for further proceedings not inconsistent with this opinion. The judgment dismissing the breach of confidentiality claim is affirmed. The judgment dismissing the breach of loyalty claim is modified to be with prejudice. Each side will bear its own costs of appeal.

_____

-13-