The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 21, 2024

**2024COA123**

**No. 24CA0321, *LTCPRO v. Johnson* — Contracts — Effect of
Integrated Agreement on Prior Agreements — Parol Evidence
Rule**

Consistent with the Restatement (Second) of Contracts,
section 213(2), a division of the court of appeals holds that, absent
unambiguous contractual language to the contrary, a completely
integrated contract discharges prior agreements only to the extent
they are within its scope.  In determining whether a prior contract
is within the scope of an integrated contract, a court must consider
all relevant evidence and the interpretation of both contracts.

COLORADO COURT OF APPEALS                    **2024COA123**

Court of Appeals No. 24CA0321
Jefferson County District Court No. 24CV30140
Honorable Meegan Alaine Miloud, Judge

LTCPRO, LLC, d/b/a Federal Benefits Made Simple, and Buck Enterprises, Inc.,

Plaintiffs-Appellants,

v.

Jason Johnson and Matthew Forrest,

Defendants-Appellees.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE SCHOCK
Fox and Johnson, JJ., concur

Announced November 21, 2024

Faegre Drinker Biddle & Reath LLP, Kyle R. Hosmer, Jesse L. Marks, Denver, Colorado; Faegre Drinker Biddle Reath LLP, David W. Porteous, Chicago, Illinois, for Plaintiffs-Appellants

Fisher & Phillips LLP, Timothy M. Kratz, Denver, Colorado, for Defendants-Appellees

¶ 1    It has become common practice for contracting parties to include a merger or integration clause in a contract, providing that the written contract sets forth the complete terms of the parties' agreement. Such completely integrated agreements generally supersede all prior agreements or negotiations between the parties that are covered by the terms of the written contract.

¶ 2    This case implicates the extent to which such agreements supersede *other* prior agreements between the parties. Consistent with the Restatement (Second) of Contracts, section 213(2), we conclude that, absent unambiguous contractual language to the contrary, a completely integrated contract supersedes prior agreements only to the extent they are within its scope.

¶ 3    In this case, LTCPRO, LLC, d/b/a Federal Benefits Made Simple (FBMS), and Buck Enterprises Inc. sought a preliminary injunction against two former employees, Jason Johnson and Matthew Forrest, based on alleged breaches of their noncompete agreements. Relying on a merger clause in a later employment agreement between FBMS and Johnson, the district court concluded that the noncompete agreements had been superseded and denied the plaintiffs' motion for a preliminary injunction.

¶ 4     We conclude that, under the circumstances of this case, the district court erred by failing to consider whether Johnson's noncompete agreement was within the scope of his later agreement. It also erred by concluding that Forrest's noncompete agreement was superseded when Forrest did not enter into any subsequent agreement. We therefore reverse the denial of the motion for preliminary injunction and remand for further proceedings.

## I.     Background

¶ 5     FBMS provides investment advisory services[1] and financial education to federal employees out of its office at the Denver Federal Center in Lakewood. Johnson and Forrest are former employees of FBMS. Johnson worked as an investment advisor, while Forrest assisted Johnson in servicing his clients.

¶ 6     In 2021, Buck Enterprises acquired FBMS. In connection with the acquisition, continuing FBMS employees — including Johnson and Forrest — each agreed to a "Non-Competition, Non-Solicitation and Confidentiality Agreement" (Noncompetition Agreement). In addition, Johnson entered into a separate

---

[1] Technically, FBMS advisors provide their investment advisory and brokerage services through other licensed entities.

"Investment Advisor Agreement" (2021 IAA), which set forth several terms of his employment as an investment advisor.

¶ 7 The Noncompetition Agreements provided that, as a condition of continued employment, Johnson and Forrest agreed, among other things, not to (1) disclose confidential information obtained during the course of their employment; (2) solicit clients for one year after the termination of employment; (3) solicit employees of FBMS for specified periods of time depending on the employee's position; or (4) compete with FBMS within 100 miles of FBMS's Lakewood office for one year after termination of employment. The Noncompetition Agreements included a merger clause, which provided: "This Agreement contains the entire agreement between the parties hereto and supersedes all prior oral or written agreements[,] representations, negotiations, and correspondence."

¶ 8 Johnson executed the 2021 IAA on the same day as his Noncompetition Agreement. The 2021 IAA contained provisions concerning, among other things, background checks, employment responsibilities, legal compliance, compensation, and termination. It did not include a noncompetition or nonsolicitation provision. The 2021 IAA also included a merger clause, which provided:

> This Agreement supersedes all prior
> agreements between [Johnson] and [FBMS]
> related to [Johnson's] engagement as an
> Investment Advisor by [FBMS] or its affiliates.
> No representation, promise, inducement, or
> statement of intention has been made by the
> parties concerning the subject matter of this
> Agreement which is not set forth in this
> Agreement.

¶ 9    In 2023, Johnson entered into a new "Investment Advisor Agreement" (2023 IAA) with FBMS.  The 2023 IAA was substantively identical to the 2021 IAA, except that it changed the governing law from Hawaii to Colorado, made a small change to the timing of payments after termination, and added three provisions: (1) no right to a commission payment would vest after termination; (2) no party would be liable to the other for losses caused by communication, internet, or computer failures; and (3) Johnson could terminate the agreement with thirty days' written notice.  The 2023 IAA included a merger clause that was identical to the one in the 2021 IAA:

> This Agreement supersedes all prior
> agreements between [Johnson] and FBMS
> related to [Johnson's] engagement as an
> Investment Advisor by FBMS or its affiliates.
> No representation, promise, inducement, or
> statement of intention has been made by the
> parties concerning the subject matter of this
> Agreement which is not set forth in this
> Agreement.

¶ 10    In November 2023, Johnson and Forrest resigned from FBMS on the same day, effective immediately.  Both explained that they were joining Ameriprise Financial Services in North Carolina.  In his resignation letter, Johnson notified FBMS that he was retaining all records and files pertaining to his clients under section VII.6 of the 2023 IAA.  That section provided that in the event of written notice of termination, Johnson could "retain existing records and files pertaining to [Johnson's] customer accounts" if he certified in writing that all such records complied with applicable law.

¶ 11    According to FBMS, Johnson began to solicit FBMS clients almost immediately after his resignation.  In addition, Johnson indicated that he intended to open a branch office for his new company less than eight miles from FBMS's Lakewood office.  Forrest intended to work out of that office to service Johnson's clients, and Johnson expected to travel to the office a few times a year to conduct financial planning meetings with those clients.

¶ 12    Days after learning of Johnson's intent to open a Lakewood office, FBMS and Buck Enterprises filed a complaint and motion for a temporary restraining order and preliminary injunction against Johnson and Forrest.  They alleged that defendants had breached

their Noncompetition Agreements by soliciting FBMS clients, opening a competing office within 100 miles of FBMS's Lakewood office, and accessing and using FBMS's confidential information. Defendants argued in response, among other things, that the Noncompetition Agreements had been superseded by the 2023 IAA.

¶ 13    The district court held a hearing on the motion for preliminary injunction, at which the Chief Executive Officer of Buck Enterprises, Katie Buck, testified. Plaintiffs argued that defendants' opening of a new office within eight miles of FBMS's office and their solicitation of FBMS clients violated the Noncompetition Agreements and would cause irreparable harm to FBMS. Defendants reiterated their arguments that the 2023 IAA "expressly supersede[d] all prior agreements" between FBMS and defendants, including the Noncompetition Agreement, and that Johnson's retention of the customer data was consistent with the 2023 IAA.

¶ 14    The district court denied the motion. It first explained that the "threshold issue that [it] must decide is a reasonable probability of success on the merits." And it concluded that "the controlling contract is the [2023 IAA], which clearly states it supersedes the 2021 contract, which includes . . . the noncompete clauses." Based

on that determination, the court found plaintiffs had not shown a reasonable probability of success on the merits. The court then cited the criteria for granting a preliminary injunction, as set forth in *Rathke v. MacFarlane*, 648 P.2d 648, 653-54 (Colo. 1982), and "taking into consideration all of those factors," it denied the request for an injunction. The court noted that "there could be harm, but not enough to meet the factors and the controlling contract."[2]

## II.    Standard of Review

¶ 15    We review the district court's denial of a motion for a preliminary injunction for an abuse of discretion. *Anderson v. Applewood Water Ass'n*, 2016 COA 162, ¶ 14. The district court abuses its discretion if it makes a legal error or if its decision is manifestly arbitrary, unreasonable, or unfair. *Id.*

¶ 16    If only legal questions are at issue, we review a district court's preliminary injunction ruling de novo. *Id.* Contract interpretation is a question of law that we review de novo, as is whether the district court applied the correct legal standard. *French v. Centura*

---

[2] The district court later stayed the proceeding pending appeal.

*Health Corp.*, 2022 CO 20, ¶ 24; *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't,* 196 P.3d 892, 897-98 (Colo. 2008).

¶ 17 Preliminary injunctive relief is appropriate only if the moving party demonstrates (1) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury that may be prevented by injunctive relief; (3) the lack of a plain, speedy, and adequate remedy at law; (4) that the preliminary injunction will not disserve the public interest; (5) a balance of the equities in favor of the injunction; and (6) that the injunction will preserve the status quo pending a trial on the merits. *Rathke*, 648 P.2d at 653-54.

### III.    Analysis

¶ 18 Plaintiffs argue that the district court erred by concluding that the 2023 IAA superseded the Noncompetition Agreements. They contend that (1) the district court erroneously failed to consider whether the Noncompetition Agreements were within the scope of the 2023 IAA, and (2) a proper analysis would have indicated that they were not. We agree that the district court erred by not considering the respective scope of the agreements in light of the language of the merger clause in the 2023 IAA and other relevant evidence. We remand to the district court to consider that issue.

## A.    Forrest

¶ 19    The district court's conclusion that the 2023 IAA superseded Forrest's Noncompetition Agreement is incorrect for the basic reason that Forrest is not a party to the 2023 IAA.  *Cf. Bewley v. Semler*, 2018 CO 79, ¶ 16 ("Generally, only parties to a contract may seek to enforce its terms.").  Thus, the district court erred by concluding that the 2023 IAA was the controlling contract as to Forrest.  Because the district court's ruling was premised primarily on that erroneous conclusion, we reverse the ruling with respect to Forrest and remand for further consideration of whether plaintiffs are entitled to a preliminary injunction against Forrest.

## B.    Johnson

¶ 20    The question of whether the 2023 IAA superseded Johnson's Noncompetition Agreement turns on the effect of the merger clause in the 2023 IAA.  More specifically, was the Noncompetition Agreement a superseded prior agreement under that provision?

### 1.    Applicable Law

¶ 21    When interpreting a contract, our primary goal is to give effect to the parties' intent.  *French*, ¶ 25.  That task begins with the language of the contract itself.  *Id.*  If the contract is unambiguous,

9

"we will deem it to express the parties' intent and enforce it according to its terms." *Id.* If the contract is ambiguous — that is, "susceptible of more than one reasonable interpretation" — we may consider extrinsic evidence to determine the parties' intent. *Id.*

¶ 22 A merger clause is a provision in a contract indicating that "a written contract is integrated, that all conditions, promises, or representations are contained in the writing, and that the parties are not to be bound except by the writing." *In re Estate of Gadash*, 2017 COA 54, ¶ 43 (citation omitted); *see also* Restatement (Second) of Contracts § 209(1) (Am. L. Inst. 1981) ("An integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement."). Its basic function is "to limit future contractual disputes to issues relating to the express provisions of the contract." *Nelson v. Elway*, 908 P.2d 102, 107 (Colo. 1995). When an agreement is completely integrated, evidence of prior agreements may not be used to contradict, vary, or supplement its terms. *Id.*; *Glover v. Innis*, 252 P.3d 1204, 1209 (Colo. App. 2011).

¶ 23 But a completely integrated agreement discharges prior agreements only to the extent they are within its scope. Restatement (Second) of Contracts § 213(2); *see also Core & Main,*

10

*LP v. McCabe*, 62 F.4th 414, 419 (8th Cir. 2023). In other words, the parties may "adopt[] a writing as a complete and exclusive statement of the terms of the agreement" while leaving a separate, unrelated agreement between the parties unaffected. Restatement (Second) of Contracts § 213 cmt. c; *see also Core & Main*, 62 F.4th at 420 (noting that a prior agreement is not superseded by a subsequent integration if it is "not inconsistent" and "would naturally be made as a separate agreement") (citation omitted).

¶ 24    Thus, if a court finds that there is a completely integrated agreement between the parties, it must then determine whether an asserted prior agreement is within the scope of the integrated agreement, based on "all relevant evidence" and interpretation of both agreements. Restatement (Second) of Contracts § 213 cmt. c.

¶ 25    Defendants take issue with this legal principle, pointing out that no Colorado case has applied this particular provision of the Restatement. But while not binding, Colorado courts frequently look to restatements as persuasive authority. *See, e.g.*, *Allstate Ins. Co. v. Med. Lien Mgmt., Inc.*, 2015 CO 32, ¶ 10; *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509 n.1 (Colo. 2007).

¶ 26    And though not directly on point, Colorado case law is consistent with the Restatement rule.  For example, in *Gadash*, the court looked to the differing scope of the two agreements to conclude that a provision in the later agreement was *not* a merger clause and thus did not void the prior agreement.  *Gadash*, ¶¶ 41-47.  In *Nelson*, the court concluded that a merger clause "plainly and unambiguously manifest[ed] the intent of the parties" to supersede prior agreements "*pertaining to the subject matter contained [in the later agreement]*."  *Nelson*, 908 P.2d at 107 (emphasis added); *see also DeFranco v. Storage Tech. Corp.*, 622 F.3d 1296, 1303 (10th Cir. 2010) (applying Colorado law and concluding that a merger clause superseded prior guarantees related to matters "expressly set forth" in the subsequent agreement).  These cases support the proposition that the scope of the agreements is relevant to whether one supersedes the other.

¶ 27    Defendants also contend that section 213 does not apply because it does not address merger clauses.  But it does address a "binding completely integrated agreement."  Restatement (Second) of Contracts § 213(2).  And a merger clause is simply one way of indicating that a contract is completely integrated.  *See Gadash*,

12

¶ 43.  Whether through an express merger clause or the nature of the contract itself, an integrated contract represents the final and complete expression of the terms of that agreement.  *See Nelson,* 908 P.2d at 107.  That does not mean it necessarily extinguishes *unrelated* agreements covering separate and distinct subject matter.

## 2.  Scope of Agreements

¶ 28    In concluding that Johnson's Noncompetition Agreement was no longer in effect, the district court did not consider whether that agreement was within the scope of the 2023 IAA.  *See* Restatement (Second) of Contracts § 213 cmt. c.  Instead, it simply determined that the 2023 IAA "clearly states it supersedes the 2021 contract, which includes, in relevant portion, the noncompete clauses."  To the extent the district court meant that the relevant noncompete clause was included in the 2021 IAA, it was incorrect.  To the extent it meant that the merger clause in the 2023 IAA was unambiguous in superseding the Noncompetition Agreement, we disagree.

¶ 29    As noted above, the merger clause provides that the 2023 IAA "supersedes all prior agreements between [Johnson] and FBMS related to [Johnson's] engagement as an Investment Advisor by FBMS or its affiliates."  At first blush, this language appears to

13

support the district court's conclusion that the 2023 IAA supplants the Noncompetition Agreement.  After all, it says *all* prior agreements.  But for three reasons, we conclude that the language of the merger clause does not alone resolve the question.

¶ 30     First, a review of the Noncompetition Agreement and the 2023 IAA as a whole leaves ambiguity as to whether the former is an agreement "related to [Johnson's] engagement as an Investment Advisor" for purposes of the merger clause.  *See* Restatement (Second) of Contracts § 213 cmt. c (requiring interpretation of both integrated agreement and prior agreement); *Univ. of Denver. v. Doe*, 2024 CO 27, ¶ 50 ("In determining whether a term is ambiguous, we must look at the contract 'as a whole.'") (citation omitted); *Core & Main*, 62 F.4th at 420 (concluding that a merger clause providing that the agreement "superseded all prior or contemporaneous agreements" was ambiguous as to the agreement at issue).

¶ 31     On one hand, Johnson was employed by FBMS as an investment advisor, so giving that phrase its broadest interpretation, any agreement Johnson signed as an employee could be one "related to [his] engagement as an Investment Advisor."

14

¶ 32   But on the other hand, read together, the agreements could reasonably support a more limited interpretation of that phrase. The 2023 IAA (like the 2021 IAA) is titled "Investment Advisor Agreement," refers to Johnson as "Advisor" or "Investment Advisor," and addresses aspects of Johnson's employment specifically related to that role. It would be reasonable to conclude that *this* is what the 2023 IAA means by an agreement "related to [Johnson's] engagement as an Investment Advisor." The Noncompetition Agreement, in contrast, refers to Johnson only as "employee," does not refer to his role or title as an investment advisor, and does not address any of the rights and responsibilities unique to that role.

¶ 33   Second, the two agreements address largely different subject matter. *See Core & Main*, 62 F.4th at 420 (concluding that, by limiting merger clause to agreements "pertaining to the subject matter hereof," the parties intended "to adopt the established legal principle that a completely integrated agreement only discharges prior agreements 'to the extent that they are within its scope'" (quoting Restatement (Second) of Contracts § 213(2))). The 2023 IAA addresses the substantive terms of Johnson's employment — including background checks, legal compliance, compensation,

15

indemnification, and termination — but *not* restrictions on competition, solicitation of clients and employees, or disclosure. *See Perricone v. Perricone,* 972 A.2d 666, 674 (Conn. 2009) (holding that completely integrated agreement did not nullify restrictions in prior agreement that it did not "mention[], cover[], or deal[] with") (citation omitted). The Noncompetition Agreement addresses *only* those latter restrictions and *not* any other terms of employment.

¶ 34     Indeed, as noted above, Forrest was required to sign only a Noncompetition Agreement. That is consistent with the view that the Noncompetition Agreement was intended to cover general obligations applicable to all FBMS employees, while the 2021 IAA, and then the 2023 IAA, were limited to the rights and obligations specifically related to Johnson's role as an investment advisor.

¶ 35     The only overlap between the two agreements concerns Johnson's retention of customer data after termination of employment. The 2023 IAA provides that Johnson may retain certain customer files upon written notice of termination, provided he certifies in writing that such retention complies with applicable law, while the Noncompetition Agreement prohibits Johnson from retaining any such files. It might be possible to read these two

16

provisions as consistent — with the 2023 IAA providing a limited carve-out from the Noncompetition Agreement's broad prohibition. But to the extent they are inconsistent, the 2023 IAA provision could supersede the inconsistent term without superseding the entire Noncompetition Agreement. *See* Restatement (Second) of Contracts § 213(1) ("A binding integrated agreement discharges prior agreements to the extent that it is inconsistent with them.").

¶ 36    Third, and perhaps most persuasively, the 2021 IAA — which the parties executed contemporaneously with the Noncompetition Agreement — contained a merger clause that was identical to the one in the 2023 IAA. No one has suggested that the 2021 IAA superseded the Noncompetition Agreement. And it would make no sense if it did. Why would the parties agree to supersede an agreement they entered into at the same time? Johnson offers no basis for interpreting the same provision differently in the two IAAs, particularly given the substantial similarity in the two agreements.

¶ 37    Indeed, taking this point one step further, the Noncompetition Agreement *also* contained a merger clause that was even broader than the one in the IAAs, stating that it "supersedes all prior oral or written agreements[,] representations, negotiations, and

17

correspondence." Johnson's language-only argument could suggest that *the Noncompetition Agreement* superseded *the 2021 IAA* — or it could place the two agreements in a stalemate as to which superseded the other. *See EnCana Oil & Gas (USA), Inc. v. Miller*, 2017 COA 112, ¶ 28 ("[A] contract should never be interpreted to yield an absurd result.") (citation omitted). It makes more sense that the parties intended there to be *both* an IAA — first the 2021 IAA, then the 2023 IAA — *and* a Noncompetition Agreement.

¶ 38     We do not, however, go so far as to conclude that the Noncompetition Agreement was *not* superseded. As noted above, "one reasonable interpretation" of the merger clause is that the 2023 IAA supersedes all prior employment agreements. *French*, ¶ 25. And depending on how broadly the 2023 IAA is construed — whether as addressing *certain* employment terms or *all* employment terms — the Noncompetition Agreement could fall within its scope.

¶ 39     The problem is that the district court did not conduct the second step of the analysis, looking only to the merger clause without considering whether the Noncompetition Agreement was within the scope of the 2023 IAA. *See* Restatement (Second) of Contracts § 213 cmt. c. Because that determination could turn on

18

factual questions concerning the parties' intent, we remand the case to the district court to conduct that analysis in the first instance "in accordance with all relevant evidence" and interpretation of *both* agreements.[3] *Id.*; *see also Gagne v. Gagne,* 2014 COA 127, ¶ 52 ("If a contract is ambiguous, the determination of the parties' intent is a question of fact."); *Core & Main,* 62 F.4th at 420-22 (remanding to determine whether employment agreement and noncompetition agreement covered same subject matter where it was ambiguous whether one was within the scope of the other).

## C. Testimony about Purpose of 2021 IAA

¶ 40    Plaintiffs also argue that the district court abused its discretion by excluding testimony from Buck about the purpose of the 2021 IAA. In light of our conclusion above, we agree.

¶ 41    Extrinsic evidence is admissible to explain or clarify the meaning of an ambiguous provision in a contract. *E. Ridge of Fort*

---

[3] Plaintiffs argue that the district court erred by effectively treating the 2023 IAA as a novation of the Noncompetition Agreement. They did not raise this argument in the district court, so we do not address it. *See Gestner v. Gestner,* 2024 COA 55, ¶ 18. But we note that plaintiffs' argument that there can be no novation because the parties did not intend to extinguish the Noncompetition Agreement merely begs the question of what the parties intended.

19

*Collins, LLC v. Larimer & Weld Irrigation Co.*, 109 P.3d 969, 974 (Colo. 2005). Moreover, in determining whether an agreement is completely or only partially integrated, and whether a prior agreement is within its scope, "wide latitude must be allowed for inquiry into circumstances bearing on the intention of the parties" — at least, as in this case, when the contract itself does not unambiguously answer that question. Restatement (Second) of Contracts § 210 cmt. b; *see also id.* § 214 cmt. a ("[W]hether the agreement is completely or partially integrated [is a] question[] determined by the court preliminary to determination of a question of interpretation or to application of the parol evidence rule."); *id.* § 213 cmt. b (requiring consideration of "all relevant evidence").

¶ 42 Given the ambiguity in the language of the merger clause in the 2023 IAA, Buck's testimony as to the purpose of the 2021 IAA[4] could have been relevant to (1) the interpretation of the phrase "agreements . . . related to [Johnson's] engagement as an

---

[4] Plaintiffs' counsel did not ask Buck about the purpose of the *2023* IAA, likely because the district court excluded testimony about the 2021 IAA. But because the two agreements contain identical merger clauses and nearly identical terms, the purpose of the 2021 IAA could reasonably bear on the purpose of the 2023 IAA.

20

Investment Advisor" and (2) whether the Noncompetition Agreement executed at the same time fell within that agreement's scope. In other words, Buck could have provided evidence relevant to whether the parties intended the two agreements to coexist.

¶ 43    Thus, on remand, the district court may consider testimony (from Buck or anyone else) concerning the purpose of the relevant agreements to the extent it helps "explain or clarify" whether the Noncompetition Agreement was within the intended scope of the 2023 IAA. *E. Ridge of Fort Collins, LLC*, 109 P.3d at 974.

## D.    Other Issues

¶ 44    Both parties ask us to go beyond the contract interpretation issue we address above and rule in their favor on the ultimate issue of plaintiffs' entitlement to a preliminary injunction. Plaintiffs urge us to direct entry of a preliminary injunction because, if the Noncompetition Agreement survives, they have satisfied all six *Rathke* criteria. *See Rathke*, 648 P.2d at 653-54. Defendants argue that, even if the 2023 IAA did not supersede the Noncompetition Agreement, the district court correctly denied the preliminary injunction because (1) a separate document, the Protocol for Broker Recruiting, permits the retention of information and solicitation of

21

clients; (2) plaintiffs did not satisfy the *Rathke* criteria; (3) the

Noncompetition Agreements are unenforceable;[5] and (4) plaintiffs

are barred from seeking injunctive relief because they did not

comply with a rule of the Financial Industry Regulatory Authority.

¶ 45    We decline to address these issues.  Although the district

court made cursory reference to the other *Rathke* criteria, its order

made clear that the ruling turned on the court's determination that

plaintiffs did not show a reasonable probability of success on the

merits.  And its determination of that issue turned on its conclusion

that the 2023 IAA superseded the Noncompetition Agreement.

¶ 46    In light of this ruling, the district court did not consider any of

the other issues the parties raise.  Nor did it make factual findings

on the other *Rathke* criteria, with the exception of its statement that

it "could make relative findings regarding harm."  *See Anderson*,

¶ 24 (remanding for district court to make factual findings under

---

[5] Covenants not to compete are generally unenforceable under Colorado law, with limited exceptions.  *See* § 8-2-113(2), C.R.S. 2021; *Saturn Sys., Inc. v. Militare*, 252 P.3d 516, 526 (Colo. App. 2011).  The parties disagree about which state law should apply — the Noncompetition Agreements say Hawaii law, while the 2023 IAA says Colorado law — as well as whether the Noncompetition Agreements satisfy Colorado's statutory exceptions.

*Rathke* after reversing denial of preliminary injunction on legal grounds). And depending on how the district court resolves the issue concerning the scope of the agreements on remand, it may or may not ever have to. Although we have discretion to affirm on any ground supported by the record, "we are a court of review, not of first view." *Doe v. Wellbridge Club Mgmt. LLC*, 2022 COA 137, ¶ 31.

¶ 47 We therefore decline to address these other issues in the first instance. The district court may address them on remand.

## IV. Attorney Fees

¶ 48 Defendants request an award of appellate attorney fees and costs under C.A.R. 38(b) on the ground that this appeal is frivolous. Because we have ruled in plaintiffs' favor, we deny this request.

## V. Disposition

¶ 49 We reverse the order denying plaintiffs' motion for preliminary injunction. We remand the case for further consideration of whether Johnson's Noncompetition Agreement is within the scope of the 2023 IAA such that it is superseded, and whether plaintiffs are entitled to a preliminary injunction, in light of this opinion.

JUDGE FOX and JUDGE JOHNSON concur.

23